■ In the Matter of LOUIS N. SABATINI, Petitioner, v. WILLIAM E. KIRWAN, as Superintendent of New York State Police, Appellant.— Proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme Court, entered in Albany County) to review a determination of the Superintendent of

the New York State Police which ordered petitioner's dismissal from the Division of State Police. Petitioner, a member of the New York State Police for 20 years, was charged with several particulars of misconduct in the performance of his duties and six of the charges against him were sustained. Those sustained were based on factual specifications alleging: that petitioner and three other State Police officers conspired with members of a gambling syndicate to permit, protect and further gambling interests in Rockland County; that he accepted bribes and gratuities in furtherance thereof; that he participated in illegal or improper "accommodation arrests" of three individuals as part of the scheme to conceal the existence of the conspiracy; and that he disclosed the existence of a wiretap on four of the syndicate's telephones to the gamblers. Prior to the institution of departmental charges, petitioner had been indicted by a Federal Grand Jury on related charges with other alleged participants in the conspiracy. However, the indictment was severed as to him and, ultimately, was dismissed without prosecution. The other alleged participants either pleaded guilty or were convicted after trial. In this proceeding, petitioner challenges the findings of the respondent as unsupported by substantial evidence in the record. We agree. A review of the record reveals that the evidence against the petitioner, except for two items, consisted entirely of hearsay recitations of declarations by gamblers, corrupt officers and others of unsavory backgrounds. Such hearsay evidence was adduced on the theory that since petitioner was allegedly part of a conspiracy, the declarations and admissions of coconspirators, made in the furtherance of the enterprise and while the enterprise was pending, were admissible against them all (*People v. Ryan*, 263 N. Y. 298, 305). However, it is axiomatic that before the admissions or declarations of coconspirators are introduced against another, the existence of the conspiracy itself must either be admitted or proved (Richardson, Evidence [Prince — 9th ed.], § 320). These admissions and declarations cannot be admitted to prove the fact of the conspiracy (*Lent* v. *Shear*, 160 N. Y. 462; *Cuyler* v. *McCartney*, 40 N. Y. 221, 228, 229). As stated in *Lent* v. *Shear* (*supra*, p. 471): "The testimony of Mr. Shear was not admissible as the declaration of a co-conspirator, because when it was received no evidence had been given tending to prove a conspiracy, and the declaration of an alleged conspirator cannot be admitted against an alleged co-conspirator for the purpose of proving the conspiracy itself." Here, the proof of the existence of the conspiracy was a hearsay declaration by a gambler to petitioner's superior, whom he was attempting to bribe, that he had a "marriage" with four State Police officers including petitioner. The gambler, Peter Variano, did not explain what he meant by the term, but the superior, Senior Investigator Colligan, testified that "at that time *I felt* that it was an agreement that he had made between State Police and that they would receive some consideration for the agreements" (emphasis supplied). In a criminal proceeding, this evidence would not be admissible to establish the existence of the conspiracy. We need not, at this time, address ourselves to the issue of whether the evidentiary requirements for proof of a conspiracy and for the admission of declarations of coconspirators apply to administrative hearings. It is clear that, although compliance with technical rules of evidence is not required in disciplinary proceedings before an administrative officer, nevertheless, no essential element of a fair trial can be dispensed with unless waived without rendering the administrative determination subject to reversal upon review (*Matter of Sowa* v. *Looney*, 23 N Y 2d 329, 333). It would be a manifest deprivation of a fair hearing to petitioner if, in this case, we were to accept the fact of the conspiracy without any other reliable proof of its existence.

Once this fact is accepted, the remaining hearsay declarations of the alleged coconspirators would become competent proof of petitioner's participation in the conspiracy without affording him any effective right of cross-examination to refute the charges. Particularly in view of the disreputable character of the declarants in this case and of the great stake petitioner obviously has in the outcome of the hearing, proof of the existence of the conspiracy must be of such a nature as to warrant reliance upon it by responsible persons (*Matter of Sowa* v. *Looney, supra,* p. 335). Measured by this standard, the ambiguous, hearsay declaration of a known gambler, made in the course of a bribery attempt, which can reasonably be viewed as an attempt to make his quarry believe that it is safe to go along with him (see *People* v. *Mitchell,* 40 A D 2d 117, 120), is insufficient in this administrative proceeding to establish the existence of the conspiracy. Since the existence of the conspiracy was not independently proved, the declarations and admissions of the alleged coconspirators are not binding upon petitioner and, although it was not error to admit them under its liberal rules of evidence, they lack sufficient probative value to constitute substantial evidence on this record to sustain the pertinent findings of the respondent. Hearsay statements, standing alone, lack sufficient probative force to sustain a determination required to be supported by substantial evidence (*Matter of Erdman* v. *Ingraham,* 28 A D 2d 5, 7–9.; see *Edison Co.* v. *Labor Bd.,* 305 U. S. 197, 230). Nor was the other evidence in the record, consisting of circumstantial proof that petitioner informed members of the gambling syndicate of the existence of a wiretap and direct proof that petitioner took part in an "accommodation arrest", sufficient, in our opinion, to sustain the board's findings. Colligan testified that he, Sabatini and another officer, Fitzgerald, installed a wiretap on four telephones operated by the gambling syndicate and that, although at the moment of installation bets were being received on at least one phone, thereafter the phones were never answered and the wiretaps provided no information despite the fact that the equipment was functional. Variano later told Colligan that some unnamed person had told him the exact day and almost the exact hour and minute that the wire was put in. Colligan testified that he and Fitzgerald were never out of one another's presence while the wiretap was being installed and that Sabatini was alone in an apartment in the building next to a telephone. On cross-examination, Colligan admitted that one Tuhill, a narcotics violator, had tipped him off regarding the gambling activities in the building in question and was instrumental in getting him an apartment in which to place his wiretap equipment. Although Tuhill had previously worked for Variano, Colligan did not think that Tuhill had informed him. Colligan also conceded that the District Attorney made application for the tap and that the latter's investigator was on the syndicate payroll. Finally, he admitted that the building superintendent might have known of the wiretap. Insofar as petitioner's participation in the conspiracy possibly may be inferred from this circumstantial evidence, the proof, as a whole, does not "exclude to a moral certainty every hypothesis except that of guilt" (*People* v. *Weiss,* 290 N. Y. 160, 163; *People* v. *Chaplin,* 8 A D 2d 286). The facts are certainly consistent with his innocence and, as stated in *People* v. *Weiss* (*supra*), "They are 'of no value if consistent with either the hypothesis of innocence or the hypothesis of guilt.'" These rules, affecting as they do only the weight to be given such evidence rather than to its admissibility, are equally applicable in an administrative proceeding as in a criminal or civil action. Finally, the only direct proof of petitioner's participation in an alleged "accommodation arrest" was given by one Jose Sein, the victim of the arrest, a Puerto Rican who spoke little English. Sein

testified that he was falsely arrested by two police officers, Sabatini and Cassino (the latter was one of the officers convicted after trial of related charges), whom he identified from photographs. At the time of his arrest, Sein had $800 in "furniture money" on his person. He testified that he was told through an interpreter to plead guilty and that he would be fined $100; otherwise he would go to jail. However, Sein was unable to testify whether petitioner instructed the interpreter to tell him to plead guilty. It was also brought out at the hearing that while the arrest report cited a search warrant and wiretaps as providing grounds for the arrest, apparently these did not exist. The arrest report was prepared by Cassino, the application for the search was executed by Cassino, the investigation prior to the arrest was by Cassino and one Hogan, and the only record proof of Sabatini's involvement was in assisting in the arrest itself. This corroborates Sabatini's testimony that the arrest was Cassino's and that he was along at the arrest only as an assistant. The proof is therefore inconclusive as to Sabatini's responsibility for this "accommodation arrest." In *Matter of Olivo* v. *Kirwan* (37 A D 2d 665, mot. for lv. to app. den. 29 N Y 2d 484), we pointed out that the determination of the Superintendent in a disciplinary matter is conclusive as to questions of fact if supported by substantial evidence but, here, the record as a whole fails to reveal such evidence in support of respondent's determination. Determination annulled, and petition granted to the extent that it seeks reinstatement and unpaid salary, deducting salary paid or to be paid and earnings from outside sources, without costs. Greenblott, J. P., Cooke, Sweeney, Main and Reynolds, JJ., concur.