OPINION OF THE COURT
Jasen, J.
This appeal raises an evidentiary question as to the scope and applicability of the exception to the hearsay rule permitting introduction of the declarations of a person engaged in a conspiracy for the purpose of establishing a coconspirator’s complicity in the criminal agreement as well as in the substantive crimes for which the conspiracy was formed.
On August 26, 1971, Eddie Ware and two codefendants were arraigned on a heroin possession charge stemming from an arrest made the previous day by Officer Joseph Galvin. After bail was set, the case was adjourned until September 7 for a preliminary hearing pending the return of a laboratory analysis of the substance confiscated as an incident to the arrest. At the arraignment, Ware was represented by an attorney by the name of N. Henry Lindenhauer, while his codefendants were represented by an attorney from Legal Aid.
On September 7, the scheduled date of the preliminary hearing, Officer Galvin, after advising the District Attorney that the laboratory analysis report had not been completed, sat down in the courtroom to await the calling of the case. While Galvin sat there, Lindenhauer, whom Galvin had never met before, approached and took a seat immediately to the left of Galvin. He then nudged Galvin and informed him that he represented Eddie Ware and that he knew Ware for a long *234 time and that Ware was a "nice guy”. To this statement Galvin said nothing, but nodded. Lindenhauer then opened a briefcase he had resting on his knees and wrote something in a black book, which Galvin believed was a date book. When his attention was directed by Lindenhauer to the writing, Galvin observed the following statement: "An arrangement can be made if its agreeable to you.” Again Galvin nodded and again Lindenhauer wrote something in the book: the numeral "4” and the printed word "Figures” immediately below the numeral. After nodding his head, Galvin told Lindenhauer that he was going out into the hallway for a cigarette.
Galvin immediately made his way to the clerk’s office and called his office to report what he believed was a bribe offer. His superior instructed him to play along with Lindenhauer and that the Internal Affairs Division and the District Attorney’s office would be notified. Shortly after Galvin returned to the courtroom, Eddie Ware’s case was called and adjourned until September 10 because of the unavailable laboratory analysis report.
Upon exiting the courtroom, Galvin was instructed by Lindenhauer to wait for him by the elevators while he spoke to his client and his law partner, Max Fruchtman. At the conclusion of their conversation with Ware, Lindenhauer and Fruchtman approached Galvin; Lindenhauer introduced Fruchtman and requested that he hold his briefcase and stand out in the hallway while he, Lindenhauer, spoke with Galvin. He then informed Galvin that if he would change his testimony concerning Eddie Ware on September 10, the date to which the case had been adjourned, he would give him $1,500. Galvin responded that he would and Lindenhauer reiterated that Eddie Ware was a "nice guy” and that Mattie Salko had said that he, Galvin, was a "good guy”. Without more, Lindenhauer signaled Fruchtman to return and the trio entered the elevator.
When the elevator doors opened on the first floor, there stood defendant Salko, an attorney whom Galvin had observed around the courthouse but did not know personally. Defendant stepped forward and inquired of Galvin: "Are you Galvin?” When Galvin responded affirmatively, defendant motioned Lindenhauer and Fruchtman to the side and told Galvin: "Listen, you can make an arrangement with these two guys”, and that "[wjhatever figure they give you, times it by two because that’s what they’re getting from their clients.” *235 Galvin replied "yeah” and defendant nodded his head signaling Lindenhauer that Galvin was "okay”. At this juncture, Galvin said goodbye to defendant and departed, observing on his way out defendant approach and engage Lindenhauer and Fruchtman in conversation.
The following day, on September 8, Galvin met with Assistant District Attorney Frank Rogers and revealed the content of his conversations with defendant and Lindenhauer. Following Rogers’ instructions, Galvin reported to the Internal Affairs Division on the morning of September 10 and was equipped with a Kel transmitter and a Minifon recorder. While at the courthouse awaiting the hearing, Lindenhauer warned Galvin that the District Attorney was going to try to make Galvin testify to the events as they actually occurred. Galvin indicated his awareness of this problem and asked Lindenhauer what he wanted him to do. Lindenhauer motioned him over to a window, rested his briefcase on the ledge, and wrote a note stating: "I have the money for you, you’ll get it after you testify.” To this Galvin responded that he would not take the stand unless he had the money first. Attempting to convince Galvin of his trustworthiness, Lindenhauer wrote another note urging that Galvin "[c]heck [him] with Mattie Salko.” Galvin took this occasion to inform Lindenhauer of his prior conversation with defendant, specifically the latter’s advice as to the fee to be charged. Lindenhauer laughed, wrote another note indicating that he had $1,500 for Galvin, and took out a billfold containing hundred dollar bills through which he fanned for the benefit of Galvin.
When Galvin continued to balk over not being paid in advance, Lindenhauer suggested in another note that he "let Matty Salko hold it”. Lindenhauer left to locate defendant, but returned when he could not find him. Frustrated in this attempted compromise, Lindenhauer, after coaching Galvin to "lay it down strong” that the search of Eddie Ware was improper, finally passed the money to Galvin. Immediately after the transfer, Lindenhauer was arrested.
As a result of Lindenhauer’s arrest, the District Attorney sought to question defendant, who after having been given his constitutional rights, agreed to speak with him. Defendant admitted that Lindenhauer had on two occasions asked him to "check out” Galvin to determine whether a deal could be made with him and that he had agreed to do so. He also admitted that he knew Lindenhauer intended to bribe Galvin. *236 He further admitted, that he had arranged for a meeting with Lindenhauer in the courthouse prior to Eddie Ware’s hearing on September 7, but that he arrived late and met Lindenhauer, Fruchtman and Galvin exiting from the elevator. Defendant confirmed that he indicated to Galvin that Lindenhauer and Fruchtman were "good guys” and could be dealt with, as well as his advice that Galvin double the fee. His signal to Lindenhauer that Galvin was a "good guy” and could be dealt with was also admitted by defendant. Finally, although defendant maintained that he had informed Lindenhauer that he did not want a direct part in the deal, he admitted when asked if he expected to receive any money for his activities that he might receive $50 for the "whole thing”.
Defendant and Lindenhauer were indicted and charged in five counts with: conspiracy in the third degree (former Penal Law, § 105.05, now conspiracy in the fifth degree [conspiracy to commit the crimes of bribery and bribing a witness]); conspiracy in the fourth degree (former Penal Law, § 105.00, now conspiracy in the sixth degree [conspiracy to commit the crime of criminal facilitation]); bribery (former Penal Law, § 200.00, now bribery in the second degree); bribing a witness (Penal Law, § 215.00); and criminal facilitation in the second degree (former Penal Law, § 115.00, now criminal facilitation in the fourth degree). The case was severed and Lindenhauer was tried and convicted of bribery and bribing a witness. The conspiracy and criminal facilitation counts were dismissed on the People’s motion prior to trial.
On defendant’s trial,[1] the court, upon motion by defendant, dismissed at the close of defendant’s case those counts of the indictment charging defendant with conspiracy to commit criminal facilitation and with the substantive crime of criminal facilitation. The remaining three counts were submitted to the jury, which returned a verdict of guilty on each count.
On appeal taken by defendant, the Appellate Division reversed, on the law, the judgment of conviction and dismissed the indictment. Leave to appeal to this court was granted to the People by a Justice of the Appellate Division. There should be a reversal.
In reaching its determination, the Appellate Division concluded that the trial court had improperly invoked the coconspirators’ exception to the hearsay rule in permitting the *237 introduction of certain evidence: to wit, Lindenhauer’s unrecorded conversations with Galvin; his recorded conversations with Gavlin; and several of the notes written by Lindenhauer to Galvin. This conclusion was anchored upon the court’s finding that the People had failed to establish a prima facie case of conspiracy by evidence independent of the declarations of Lindenhauer. We disagree.
As a general rule, an admission made by one defendant is not binding upon a codefendant. (People v Payne, 35 NY2d 22, 27; People v Jackson, 18 NY2d 516, 519; Richardson, Evidence [10th ed], § 232.) The rule is otherwise, however, where codefendants are partners in crime such that each defendant can be viewed as acting as an agent for each defendant engaged in the criminal partnership. (Anderson v United States, 417 US 211, 218, n 6; Krulewitch v United States, 336 US 440, 442-443.) United by this "privity of obligation” (see Fisch, New York Evidence [2d ed], § 802), defendants engaged in a conspiracy are bound by one another’s declarations to the same extent that a principal is bound by the declarations of his agent. (Anderson v United States, supra.) Thus, any declaration by a conspirator made during the course of and in furtherance of the conspiracy is admissible against a coconspirator as an exception to the hearsay rule. (Id., at p 218; Lutwak v United States, 344 US 604, 617; People v Rastelli, 37 NY2d 240, 244, cert den 423 US 995; People v Luciano, 277 NY 348, 358; see, generally, Levie, Hearsay and Conspiracy: A Reexamination of the Co-Conspirators’ Exception to the Hearsay Rule, 52 Mich L Rev 1159.)
This exception is not limited to permitting introduction of a conspirator’s declaration to prove that a coconspirator committed the crime of conspiracy, but, rather, may be invoked to support introduction of such declaration to prove a coconspirator’s commission of a substantive crime for which the conspiracy was formed. (Rodriguez v State, 552 SW2d 451, 454 [Tex].) However, whether utilized to sustain introduction of a hearsay declaration of a conspirator to prove a coconspirator’s complicity in the conspiracy or a substantive crime, this evidence may be admitted only upon a showing that a prima facie case[2] of conspiracy has been established. (People v *238 Rastelli, 37 NY2d 240, supra; see, e.g., People v Lipinski, 65 Cal App 3d 566; People v Jackson, 49 Ill App 3d 1018; Weatherington v State, 139 Ga App 795; State v Marshall & Brown-Sidorowicz, 2 Kan App 2d 182; State v Scanlon, — Minn —, 268 NW2d 63 [Minn]; Floyd v Commonwealth, — Va —, 249 SE2d 171 [Va]; see, generally, Necessity and Sufficiency of Independent Evidence of Conspiracy to Allow Admission of Extrajudicial Statements of Coconspirators, Ann., 46 ALR3d 1148.) Of course, the determination whether a prima facie case of conspiracy has been established must be made without recourse to the declarations sought to be introduced. (See Lent v Shear, 160 NY 462, 471; Matter of Sabatini v Kirwan, 42 AD2d 1022, 1023.)
Turning to an analysis of the case before us, we conclude that quite apart from the declarations of Lindenhauer as to defendant’s participation in their criminal partnership, the evidence presented by the People was sufficient to establish a prima facie case of conspiracy permitting introduction of Lindenhauer’s declarations in their entirety as to both the conspiracy count and the substantive crimes of bribery and bribing a witness. A parsing of the proof in this case reveals that the evidence offered by the People fell into two categories: acts and declarations of Lindenhauer and those of defendant. With respect to the former, Lindenhauer’s nonverbal acts including his approach of Galvin, the fact of their meetings and the ultimate transfer of the money by Lindenhauer to Galvin as testified to by Galvin were clearly admissible as to each count of the indictment without the necessity of first establishing the existence of a conspiracy. (See United States v *239 Nuccio, 373 F2d 168, 170, cert den 392 US 930; United States v Costello, 352 F2d 848, 853-854, vacated 390 US 201.)[3] Distinction has long been made between acts and declarations. The hearsay rule interdicts the introduction of an out-of-court statement offered to establish the truth of its assertion; it has, as a general rule, no application to an act which is not intended to serve as an expressive communication. (See Developments in the Law — Criminal Conspiracy, 72 Harv L Rev 920, 988.) Thus, it is not necessary to resort to the coconspirators’ exception to permit introduction of Galvin’s testimony as to Lindenhauer’s acts. (See Anderson v United States, 417 US 211, 219, supra; Lutwak v United States, 344 US 604, 618, supra; United States v Pope, 574 F2d 320, 327, cert den sub nom. James v United States, 436 US 929; State v Tilley, 292 NC 132, 140.)
As for Lindenhauer’s declarations, distinction must also be made between those statements made solely in explanation of his acts and those in which he volunteered additional information including reference to defendant’s participation in the scheme. Wigmore has stated: "The theory of the hearsay rule (§ 1361 supra) is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the hearsay rule does not apply. The utterance is then merely not obnoxious to that rule.” (6 Wigmore, Evidence [Chadbourn rev ed], § 1766 [emphasis in original].) Demonstrative of this principle is a statement or utterance which constitutes a verbal part of an act. Such statements are not hearsay if offered not for the truth of their assertions, but, rather, to attach legal effect to the conduct which they accompany. (Id., at § 1772.)
In the instant case, it is readily apparent that the hearsay rule did not preclude introduction of Galvin’s testimony as to Lindenhauer’s statements accompanying his acts. Without *240 these statements Lindenhauer’s acts — his approach of Galvin, their meetings and even the transfer of money by Lindenhauer to Galvin — would remain equivocal and without legal significance. None of Lindenhauer’s statements, except those in which he referred to defendant, were offered for the truth of their assertions. It was only these latter declarations — for example, Lindenhauer’s statement to Galvin that he had checked him out with defendant and his suggestion that defendant hold the money — that were offered for the truth of their assertions: namely, that Lindenhauer had knowledge that defendant was involved in the conspiracy — and which were, therefore, barred by the hearsay rule. Thus, Lindenhauer’s statements to Galvin, with the exception of those which included references to defendant, were admissible without the necessity of demonstrating the existence of a conspiracy. (See United States v Nuccio, 373 F2d 168, 170, supra; United States v Costello, 352 F2d 848, 853-854, supra.)
With regard to the second category of evidence introduced by the People — the acts and declarations of defendant — the testimony of Galvin and Assistant District Attorney Rogers was clearly admissible. There existed no bar precluding Galvin’s testimony as to his observation of defendant’s acts and to the extent that such acts were intended as expressive communications, they, together with defendant’s actual declarations to Galvin and Rogers were properly received as admissions. (See, e.g., People v Colasanti, 35 NY2d 434, 436.)
Having determined that there existed no necessity to demonstrate the existence of a conspiracy to permit introduction of the testimony of Galvin and Rogers with the exception of Galvin’s testimony as-to Lindenhauer’s declarations referring to defendant, we conclude that this independent evidence was sufficient to establish a prima facie case of conspiracy permitting introduction, under the coconspirators’ exception to the hearsay rule, of Lindenhauer’s declarations further evidencing defendant’s participation in the conspiracy. Not to be slighted in the resolution of this question is the People’s burden of proof: to introduce these declarations they need not prove defendant’s participation in the conspiracy beyond a reasonable doubt, as they must to sustain a conviction, but need only establish a prima facie case of conspiracy. This burden the People have certainly met. Galvin’s testimony established the existence of a bribe by Lindenhauer, as well as a degree of participation by defendant as evidenced by defendant’s con *241 duct in "checking out” Galvin for Lindenhauer. Moreover, defendant’s own statements to Rogers confirmed his agreement with Lindenhauer to "check out” Galvin for purposes of a bribe. Unquestionably most debilitating to defendant’s case was his admission to Rogers that he might receive $50 for the "whole thing”. The Appellate Division discounted the impact of this last statement finding it equivocal in that defendant might have meant only that he would receive this money for legal services rendered, if necessary, at Eddie Ware’s arraignment. Suffice it to say that there is no evidence that defendant performed any legal services on behalf of Eddie Ware. While this admission to Rogers might not have been sufficient alone to sustain defendant’s conviction, it was certainly sufficient when viewed in conjunction with the remaining evidence to establish a prima facie case of conspiracy permitting introduction of the true hearsay declarations of Lindenhauer.
Notwithstanding this conclusion, our inquiry is not yet at an end, for defendant contends that even if no violation of the hearsay rule occurred upon introduction of the testimony of Galvin, he was nonetheless denied his rights under the confrontation clause of the Sixth Amendment: namely, to confront and cross-examine Lindenhauer, whose declarations referring to defendant were introduced through Galvin’s testimony. While the hearsay rule and the confrontation clause share a similarity of purpose, the protections they afford have not been viewed as entirely equatable. (Dutton v Evans, 400 US 74, 86; see, generally, Davenport, The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis, 85 Harv L Rev 1378.) However, upon the facts of this case, we find no legitimate reason for reaching contrary conclusions on these issues. (Dutton v Evans, 400 US, at pp 88-89, supra.)
In addition to the issues addressed in this opinion, the court considered the other contentions made by defendant-respondent in his brief in support of affirmance and concluded such further contentions were without merit.
Accordingly, the order appealed from should be reversed, and the case remitted to the Appellate Division, First Department, for a review of the facts.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler and Fuchsberg concur with Judge Jasen.
Order reversed and the case remitted to the Appellate *242 Division, First Department, for further proceedings in accordance with the opinion herein.

. Prior to defendant’s trial, Lindenhauer died.

. Prior to the advent of the Federal Rules of Evidence, it would appear that the majority of the circuit courts of appeals employed a prima facie proof requirement for introduction of a conspirator’s declaration against a coconspirator. (See, e.g., United States v Mayes, 512 F2d 637, cert den 422 US 1008.) However, more recent cases interpreting rule 104, which provides in pertinent part:
*238 "(a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.
"(b) Relevancy conditioned on fact. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.”
have adopted a preponderance of the evidence standard. (See, e.g., United States v Petrozziello, 548 F2d 20.) One reason suggested for this departure from the prima facie proof requirement is that subdivision (a) of rule 104, specifically the last sentence, can arguably be interpreted to permit a court to consider the conspirator’s declaration sought to be introduced in determining whether a sufficient showing of a conspiracy has been made to permit introduction of the declaration. (United States v Enright, 579 F2d 980, 985, n 4.)

. Certiorari was granted in Costello along with United States v Marchetti (352 F2d 848) solely to review a claimed violation of the defendants’ Fifth Amendment rights. Marchetti was reversed on this ground (390 US 39). The Second Circuit’s decision in Costello would have been similarly reversed but for Costello’s intervening death. The court, therefore, vacated the lower court’s judgment.