*262 OPINION OF THE COURT
Lyman H. Smith, J.
Charged with one count of conspiracy to prevent competitive bidding under the General Municipal Law (§ 103, subd 7), two counts of bribery, second degree (Penal Law, § 200.00), two counts of rewarding official misconduct, second degree (Penal Law, § 200.20) and a violation of the Donnelly Act (General Business Law, §§ 340, 341), defendants L. B. Smith, Inc., and Glenn C. Douglas move this court for dismissal of Indictment No. Sl/1980, returned by the September 1977 Extraordinary and Special Grand Jury of Onondaga County in March, 1980.
The indictment results from the Grand Jury’s extensive investigation into the methods and procedures employed by the County of Onondaga during the 1970’s in awarding contracts to vendors for the purchase of its heavy equipment. In particular, the charges track the purported linkage between contracts awarded and, in each instance, an alleged vendor kickback of a predetermined percentage of the contract price to the Onondaga County Republican Committee (OCRC).
The investigation has been conducted under the direction of Onondaga County’s Special Prosecutor, Peter D. Andreoli.
The indictment accuses defendants of participating in a widespread and ongoing conspiracy among certain county officials, officers of the Onondaga County Republican Committee (hereinafter OCRC) and other heavy equipment vendors in the Onondaga County area (including not only corporate vendors, but also individual officers thereof) to systematically and illegally raise money for the benefit of the OCRC by parceling out the county’s purchases of heavy equipment to participating vendors on a rotating basis, employing “tight bids”, all based upon a prearranged understanding, whereby the sale price for such equipment was inflated to include the amounts paid to the OCRC as kickbacks upon completion of sale transaction.[1] [The following constitutes a portion of the court’s decision disposi *263 tive of the defendants’ pretrial omnibus motion, inter alia, to dismiss the above-identified indictment.]
MOTION IN limine: COCONSPIRATOR EXCEPTION TO THE HEARSAY RULE
Anticipating that, upon the trial to follow, the People intend to offer certain “statements and/or actions” of alleged coconspirators to establish the defendants’ complicity in the conspiracy alleged in the indictment’s first count, defendants now move, in limine, that the court conduct a pretrial hearing for the purpose of ruling upon the admissibility of such evidence prior to the commencement of trial.
The defendants press for this pretrial determination in order to prepare for trial and, more importantly, to eliminate any possible prejudice that might result from the jury’s hearing and considering such statements or acts despite a midtrial limiting charge or ruling of inadmissibility.* [2]
The People not only oppose this application as premature, arguing that no statutory or decisional authority exists for such in limine relief, but also characterize as “grossly unfair” any requirement that they, in effect, try their case twice.
Defendants’ motion triggers a troublesome evidentiary problem, i.e., the exception to the hearsay rule which permits the People to introduce, in a conspiracy trial, evidence of extrajudicial statements of one coconspirator for the purpose of proving another conspirator’s participation in the alleged conspiracy. Simply stated, the coconspirator exception to the hearsay rule permits admissibility on an otherwise objectionable hearsay statement, allegedly made by one member of a conspiracy, against any other alleged member of that conspiracy, providing four *264 threshold, or preliminary, facts are first established: (1) there must be an independent showing of the existence of the conspiracy; and (2) of the declarant’s and the alleged defendant conspirator’s participation therein; and (3) the statement itself must have been made in furtherance of; and (4) during the conspiracy. (See People v Salko, 47 NY2d 230; Lutwak v United States, 344 US 604.)
The first two criteria present the most formidable challenge to the People, for these factors must be preliminarily established without resort to the statement itself, “[otherwise, hearsay would lift itself by its own bootstraps to the level of competent evidence.” (Glasser v United States, 315 US 60, 75; see, also, People v Salko, supra.)
The historical rationale for the exception to the hearsay rule is premised upon the recognition that coconspirators are agents of one another and, perforce, their declarations in furtherance of the conspiracy are binding upon one another. (See Krulewitch v United States, 336 US 440; Fiswick v United States, 329 US 211.) This concept has been codified in the Federal Rules of Evidence as rule 801 (d) (2) (E). Of note, New York’s Proposed Code of Evidence, now under review by the New York State Law Revision Commission, adopts, in toto, rule 801 (d) (2) (E).[3]
However, the problems confronting our trial courts lie not in the substantive concepts of this rule, but rather, in its practical application.
Compounding the lack of judicial uniformity in applying the rule is the fact that declarations by coconspirators may constitute the most vital aspect of the People’s case and, accordingly, their admissibility takes on enormous significance in the conduct of a conspiracy trial.[4]
Given the foregoing, and focusing upon the motion at hand, this court conceives that four basic issues require resolution:
*265 (1) Do the nonverbal acts of conspirators fall within the coconspirator exception to the hearsay rule for purposes of determining the admissibility of such acts?
(2) Is it for the Trial Judge or the trial jury to determine the admissibility of a coconspirator’s statements under the coconspirator exception to the hearsay rule?
(3) What quantum of proof is required to satisfy the existence of the four “threshold facts” necessary to a finding of admissibility?
(4) May the admissibility of such statements be determined pretrial?
These questions will be considered seriatim.
The first of these questions must be answered in the negative.
As cogently observed by Judge Jasen, writing for a unanimous court in Salko (47 NY2d 230, 239, supra), “Distinction has long been made between acts and declarations. The hearsay rule interdicts the introduction of an out-of-court statement offered to establish the truth of its assertion; it has, as a general rule, no application to an act which is not intended to serve as an expressive communication. (See Developments in the Law — Criminal Conspiracy, 72 Harv L Rev 920, 988.) Thus, it is not necessary to resort to the coconspirators’ exception to permit introduction of [a witness’] testimony as to [an alleged coconspirator’s] acts.” (Emphasis supplied.)
Judge Jasen’s analysis squares with that of the Supreme Court (see Lutwak v United States, 344 US 604, 618, supra; Anderson v United States, 417 US 211, 219) and the Second Circuit Court of Appeals (see United States v Geaney, 417 F2d 1116, 1120, n 3).
Thus, the People in proffering evidence of a conspirator’s nonverbal acts are not confronted with the four preliminary criteria imposed by the coconspirator exception to the hearsay rule. Evidence of nonverbal acts, to be admissible, need only be relevant to prove the existence of the conspiracy. Were it otherwise, the People would be forever chasing *266 their tails and their task of establishing the conspiracy, either for purposes of establishing the threshold criteria necessary to admit a coconspirator’s statement, or, ultimately, to establish the defendant’s guilt, would become a virtual impossibility.
With reference to the second question (who determines admissibility), the Court of Appeals has not yet ruled.[5] However, the Appellate Division, Second Department, recently confronted this issue and squarely decided in favor of placing the responsibility for determining admissibility upon the Trial Judge. In People v Halpin (71 AD2d 659, 660-661, mot for lv to app den 48 NY2d 716) the court, quoting at length from Carbo v United States (314 F2d 718, 736-737), set forth the rationale for its decision: “ ‘Yet if by independent evidence the defendant’s position as a coconsjgrator is to be established by the jury upon their judgment beyond a reasonable doubt, there is no occasion ever jKfresoEt to the declarations at all. The district court in effect will have told the jury, “You may not consider this evidence-unless you first find the defendant guilty.” *** It is for the judge then, and not the jury, to determine the admissibility of the declarations. In making this determination the test is not whether the defendants’ connection had by independent evidence been proved beyond a reasonable doubt, but whether, accepting the independent evidence as credible, the judge is satisfied that a prima facie case (one which would support a finding) has been made. Thereafter it is the jury’s function to determine whether the evidence, including the declarations, is credible and convincing beyond a reasonable doubt.’ ”
*267 This court is satisfied that Halpin enunciates the proper rule.[6]
It is equally satisfied that, for purposes of the preliminary determination of admissibility, the People need only establish the existence of the four threshold criteria by prima facie evidence. That this is the proper standard of proof is confirmed in People v Salko (47 NY2d 230, supra) and People v Halpin (supra).[7]
Finally, defendants’ motion in limine (seeking pretrial determination of the admissibility of anticipated coconspirators’ statements) pushes the coconspirator exception into relatively unchartered procedural waters. May such a determination be made pretrial?
A negative response to the question may, at first blush, appear to be not only justified but required, simply by virtue of the fact that in multidefendant conspiracy trials our courts have traditionally resisted ruling upon the admissibility of evidence which has yet to be proffered and which evidence (pretrial) will, at best, be speculative.[8] However, a negative response at this juncture may foreclose the court’s opportunity to initiate procedures that will structure the order of proof upon the trial to follow in such way as to minimize the chances that the trial jury may inadvertently hear (and consider) inadmissible and highly prejudicial evidence.
*268 Motions in limine can be characterized as being of three types:
(1) A prohibitive motion in limine seeking an order definitively barring the opponent from offering or mentioning the precluded evidence in any manner during the trial.
(2) A conditional motion seeking a ruling requiring the opposing party to refrain from offering, or in any manner mentioning before the jury, evidence constituting the subject matter of the ruling, without first notifying court and counsel of its intention to offer such evidence and without first obtaining the court’s resolution of admissibility out of the hearing of the jury.
(3) A motion in limine seeking a ruling permitting the introduction of evidence.
Here, defendants’ motion is couched in terms of “absolute preclusion”. However, the alleged “hearsay statements” are not otherwise identified. Of consequence, to identify prospectively the anticipated hearsay declarations of alleged coconspirators, and to resolve in each instance the issue of admissibility, would require a substantial hearing duplicative of the trial itself (in order to develop a necessary foundation for an absolute preclusion order). In this regard, it should be noted that the instant indictment charges a complex “spoke and wheel conspiracy”, involving private industry, public officials and various officers and members of a partisan political party. In sum, the circumstances here do not favor absolute prohibitory relief.[9]
This does not put to rest the defendants’ motion.
Under the circumstances here, the court conceives that the defendants’ motion is salutary, admirably serving to alert court and counsel (1) to the issues surrounding the admissibility of the anticipated declarations of coconspirators and (2) to the order of proof that will best serve the *269 demands of due process upon the trial to follow. To this end, the motion in limine will be treated as one seeking a “conditional prohibition” as distinguished from an “absolute prohibition”.
Accordingly, the court will direct (pretrial) that the prosecution shall refrain from any allusion, either in words or substance, to anticipated statements or declarations of alleged coconspirators during the voir dire of veniremen, or during the opening statement to the trial jury. Further, the court directs that the prosecution, insofar as possible, schedule its witnesses and so direct the order of proof that nonhearsay testimony and evidence be first elicited which may reasonably be expected to fall within the requisite criteria to permit resolution of admissibility of hearsay declarations or statements before any testimony identifying such declarations or statements is solicited.[10]
It shall be the continuing responsibility of the People to alert court and counsel to an intention to solicit testimony which may reasonably be expected to fall within the coconspirator exception to the hearsay rule. Such notice should be given at that point during trial when the People are satisfied that the questions about to be asked will trigger the evidence of a coconspirator’s statement or declaration. If necessary, the trial jury may be excused and an offer of proof taken out of the presence and hearing of the jury. At that point, the court may then review the evidence, record its preliminary findings of fact and rule upon admissibility of the coconspirator’s statements out of the presence of the jury. (See People v Halpin, 71 AD2d 659, mot for lv to app den 48 NY2d 716, supra.)
In this regard, counsel on both sides are admonished to avoid prematurely wafting before veniremen or jurors evidence that is either patently inadmissible or that will require appropriate foundation to permit receipt thereof upon the trial to follow.
Hopefully, the foregoing directives of the court will avoid during trial prejudicial errors in dealing with anticipated coconspirator’s hearsay declarations.
*270 Accordingly, defendants’ motion for a pretrial ruling upon the admissibility of anticipated coconspirator statements (not otherwise identified) is granted only to the extent as above set forth.

. Several other corporations and individuals named in this indictment as coconspirators have also been charged in independent but similar indictments. Of those, two *263 corporate vendors, three individual officers of such corporations, the Onondaga County Executive and a former chairman of the OCRC have pleaded guilty to participating in this criminal venture, or in conjunction with pleas to other crimes, have admitted complicity in this scheme.

. While defendants, at this juncture, are limited to speculation upon the anticipated evidence of “statements and acts”, several overt acts set forth under Count 1 of the indictment relate solely to other corporations, and officers thereof, alleged to have participated in the conspiracy with which the defendants are charged. Additionally, the People do not suggest that such allegations will not constitute part of their evidence-in-chief upon the trial to follow.

. Proposed Code of Evidence for the State of New York (1980-1981), under consideration by the New York State Law Revision Commission.

. See comprehensive treatment of the coconspirator exception to the hearsay rule found in Weinstein’s Evidence (vol 1, par 104[05]) and 46 ALR3d 1148 et seq. (also see Marcus, Prosecution and Defense of Criminal Conspiracy Cases, ch 5, §§ 5.01-5.06).

. In People v Bell (48 NY2d 913) the Court of Appeals seems to indorse the submission of the primary fact issue of admissibility to the trial jury. However, the court in Bell dealt with a given set of facts. The admissibility issue had, in fact, been given to the jury for its determination and the question presented on appeal was whether the Trial Judge had properly instructed the jury on the proper standard of proof for the jury to use in making its determination. Obviously the court was not deciding, and had no occasion to decide, whether this preliminary fact issue of admissibility should have been determined by the Trial Judge. In sum, Bell should not be considered as precedent on this issue.
It should be noted that, even on the Federal level where this issue would seem to have been decided years ago (United States v Dennis, 183 F2d 201, affd 341 US 494, reh den 342 US 842), the Federal Circuit Courts are still not in unanimity. (Cf. United States v Haldeman, 559 F2d 31, 118, n 247, cert den 431 US 933; Kessler, The Treatment of Preliminary Issues of Fact in Conspiracy Litigations: Putting the Conspiracy Back into the Coconspirator Rule, 5 Hofstra L Rev 77.)

. Of course, having decided that the admissibility question is one for the Trial Judge, and not the trial jury, there should be no occasion for the trial jury to even consider the issue of admissibility. Giving the jury “a second bite of the apple” would serve no useful purpose while, at the same time, inviting confusion and prejudice. (See United States v Dennis, 183 F2d 201, affd 341 US 494, supra; see, also, People v Halpin, 71 AD2d 659, mot for lv to app den 48 NY2d 716, supra.)

. On the issue of the proper standard of proof required to admit such evidence, the Federal courts have apparently reached no uniformity. (See 1 Weinstein, Evidence, par 104105], p 104-44.4.) One writer opines that the United States Supreme Court adopted the prima facie standard in United States v Nixon (418 US 683) although conceding that the court’s statement constituted mere dicta. (See Kessler, The Treatment of Preliminary Issues of Fact in Conspiracy Litigations: Putting the Conspiracy Back into the Coconspirator Rule, 5 Hofstra L Rev 77; cf. Bergman, The Coconspirators’ Exception: Defining the Standard of the Independent Evidence Test Under the New Federal Rules of Evidence, 5 Hofstra L Rev 99, 103.)

. Unlike procedures which call for pretrial review of issues concerning a defendant’s criminal history (see People v Sandoval, 34 NY2d 371; People v Duffy, 44 AD2d 298, affd 36 NY 2d 258), the voluntariness of a confession, identity of the accused, fitness to stand trial and the validity of search and seizure (see CPL 60.45; also see CPL arts 240, 255, 710, 730; cf. People v Little, 83 Misc 2d 321, for pretrial determination of admissibility of “dying declaration”), the admissibility of a coconspirator’s statement usually will rest upon the identical proof central to the People’s burden of proving a defendant coconspirator’s guilt.

. This is not to say, however that a pretrial fact-finding process and advance rulings in cases involving the coconspirator exception to the hearsay rule will be rare. “[I]n most cases the judge can determine from colloquy, documents marked in advance of trial, suppression hearings and [from] one or two witnesses whether there is sufficient evidence to warrant admission of a co conspirator’s statement. Armed with this information he should rule conditionally on admissibility as soon as possible.”(See 1 Weinstein, Evidence, par 104[05], p 104-44.4.)

. See United States v Petrozziello (548 F2d 20); cf. United States v Bell (573 F2d 1040, 1044).