OPINION OF THE COURT
Herman Cahn, J.
Defendants move to exclude from evidence a video tape recording (video tape) offered in evidence by the People.
The indictment herein charges 31 defendants in four separate counts. The first count charges a violation of section 190.65 of the Penal Law, in that defendants, acting in concert, were engaged in a scheme to defraud in the first degree; the second charges them with the crime of conspiracy in the fifth degree; the conspiracy being to commit the class E felony of scheme to defraud in the first degree. The subject of the scheme is the sale of tantalum to the public. At present, 19 defendants are on trial.
The video tape shows one of the defendants making a presentation to a group of men. The presentation extols the *932 profitability of selling tantalum to the public and discusses various techniques and sales pitches which can be used to enhance sales. The defendant who is seen on the tape also mentions several codefendants and the methods they used to make sales, and boasts about the large sums of money they obtained by using these techniques. The men to whom the presentation was made were F.B.I. agents.
Defendants (other than Meci) argue that the tape should not be admitted, because, at best, it is hearsay as to them; admittedly, they are correct in this assertion. However, a coconspirator’s statements are admissible even though hearsay, if they are made during and in furtherance of the conspiracy. (People v L. B. Smith, Inc., 108 Misc 2d 261.) Once a prima facie case of conspiracy has been established without recourse to the declarations sought to be introduced, any declaration by a conspirator made during the course of and in furtherance of the conspiracy is admissible against a coconspirator as an exception to the hearsay rule. (People v Malagon, 50 NY2d 954; People v Salko, 47 NY2d 230; People v L. B. Smith, Inc., supra.) The court has determined that the People have met their initial burden of introducing prima facie proof of conspiracy, without recourse to the tapes.
The issue thus is whether the presentation made by defendant Meci on the video tape was made in furtherance of the conspiracy alleged in the indictment, as to which there has been proof introduced, or whether that presentation was part of a second conspiracy, i.e., is the court faced with proof of a single conspiracy or of multiple conspiracies? This question of single versus multiple conspiracies has been dealt with most commonly in Federal cases. The law was succinctly described by Judge Learned Hand, in United States v Lekacos (151 F2d 170, 172-173, revd on other grounds sub nom. Kotteakos v United States, 328 US 750): “The acts and declarations of confederates, past or future, are never competent against a party except in so far as they are steps in furtherance of a purpose common to him and them. Declarations are no different from other acts; they become competent only when they are uttered in order to accomplish the common purpose * * * Thieves who dispose of their loot to a single receiver — a single *933 ‘fence’ — do not by that fact alone become confederates: they may, but it takes more than knowledge that he is a ‘fence’ to make them such” (citing cases). The later Federal cases have typically involved smugglers, distributors and many retail and street sellers of narcotics on a variety of interlocking levels. The Court of Appeals for the Second Circuit has noted in United States v Bertolotti (529 F2d 149, 154-155): “This Circuit has gone quite far in finding single conspiracies in narcotics cases * * * Despite the existence of multiple groups within an alleged conspiracy, we have considered them as part of one integrated loose-knit combination in instances where there existed ‘mutual dependence and assistance’ among the spheres, United States v. Tramunti, supra, a common aim or purpose among the participants * * * or a permissible inference, from the nature and scope of the operation, that each actor was aware of his part in a larger organization where others performed similar roles equally important to the success of the venture * * * The common thread running through these cases is our treatment of them as general, albeit illegal, business ventures * *
The court has apparently developed this posture based on the realistic theory that “in many narcotics distribution networks the ultimate retailers may not know the identities of those who supply their wholesaler, and the retailers’ identities may be unknown to those suppliers; but all are well aware that they are participating in a collective venture.” (See United States v Martino, 664 F2d 860, 876; United States v Moten, 564 F2d 620; United States v Miley, 513 F2d 1191.) Implicit in the Federal courts’ treatment of involved narcotics distribution networks as a single conspiracy is the fact that the subject of the conspiracy is a contraband substance whose very possession is illegal. This court has not been able to find any cases, nor have any been cited to it, where a similar conclusion (of a single conspiracy) has been reached where the possession of the substance dealt in is not itself illegal. The substance involved in the instant case is tantalum, a metal and ore which is normally the subject of commerce and whose possession and sale is not per se illegal. Therefore, in analyzing the facts heretofore introduced to determine *934 whether the video tape is part of the conspiracy alleged, the court subjects such facts to a more rigorous analysis. The mere fact that defendant Meci attempted to arrange for the sale of tantalum does not by itself make his presentation part of the conspiracy as to which proof has thus far been adduced.
The People have adduced evidence thus far to establish that the common purpose or aim of the conspiracy alleged was to sell tantalum to the public as an investment on the retail market. Defendant Meci’s video tape declarations amount to a lecture and question and answer session as to how the defendants sold investments in tantalum to the public and were given for the purpose of advising the group as to how to set up other outlets for the sale of tantalum. The purpose was to form other groups of sellers and to train their salesmen; it was not directly involved with sales to the public, as were the acts of the other conspirators. Thus after a careful review of the evidence thus far, defendant Meci’s presentation cannot be considered to have been made during the course of and in furtherance of the conspiracy proved thus far. It is clear that, unless there is more proof forthcoming as to the scope of the conspiracy, defendant Meci’s declarations establish the existence of a second conspiracy, not necessarily involving all of the defendants named herein, and notwithstanding only one conspiracy was charged in the indictment.
Therefore, at this time the video tape will not be admitted as to all defendants other than defendants Meci and Mineral Resources. If the People seek its limited admission, the court will review the video tape with a view to its redaction pursuant to the provisions of Bruton v United States (391 US 123).