■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAVIER LOPEZ, Appellant.—Judgment, Supreme Court, New York County (Edward McLaughlin, J.), rendered June 24, 1988, convicting defendant of criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the first degree and conspiracy in the second degree, for which defendant was sentenced to 25 years to life imprisonment on the criminal sale and criminal possession charges and 8⅓ to 25 years on the conspiracy charge, concurrently, unanimously modified, on the law to set aside the conviction for criminal possession of a controlled substance in the first degree, vacate the sentence imposed thereon, dismiss that count, and otherwise affirmed.

This prosecution arose out of a narcotics investigation conducted from May 1986 until April 1987 of a narcotics enterprise organized by one Valentino Kydd. In October 1986, Kydd's telephone was tapped by court-ordered electronic surveillance. Sergeant Omar Mendez, an expert in language and codes, prepared transcripts of intercepted conversations. Defendant's voice was intercepted over 30 times. Mendez testified that defendant responded on 27 occasions to a telephone call from Kydd's telephone to a specified beeper number. When defendant was arrested he was found in possession of two beepers bearing numbers on which Kydd had called from his telephone. Mendez provided substantial testimony as to certain categories, denominated by time periods, of recorded conversations. Mendez also provided a translation of a litany of code words and phrases which were used by Kydd, defendant and others in setting up and carrying out narcotics deals. Kydd's testimony established that certain messages invariably were followed by the arrival of defendant or an accomplice, who would arrive with a briefcase or other baggage in one of two cars. The two cars were registered to defendant, at his own residence, and a repair order was made out on one car to defendant's accomplice. The accomplice was identified by

name during the telephone conversations; several phone conversations, although not providing defendant's full name, alluded to "Javier" being "here" or his arrival being imminent. Certain of these phone conversations, which were initiated by beeper, referred in code to other activities, such as buyers being arrested.

On February 26, 1987, at 5:10 P.M., defendant's accomplice, Jorge, arrived in defendant's car, carrying a shoulder bag, stayed 30 minutes, then left for a Queens address. At the Queens address, Con Edison records indicated that the resident of the first-floor apartment was Javier Lopez. Shortly afterward Andrea Martinez arrived at Kydd's apartment, in response to a phone call. Surveillance observed that she met with several of the codefendants. When she returned to her own address, she was arrested. One and one-half kilos of cocaine were recovered from her bag. Phone calls later that day, in code, alluded to the arrest. During March and April defendant's voice was not intercepted on the telephone. On April 14, an undercover detective who had made previous buys from Kydd was admitted to Kydd's apartment by defendant, where she made arrangements with Kydd to buy six kilos of cocaine on the following day. On April 15, a search warrant was executed in Kydd's apartment. At 1:20 P.M. defendant called and Mendez answered the phone. Mendez identified himself as Kydd's brother-in-law and stated that Kydd had left something for defendant. When defendant arrived an hour later in one of two cars he was arrested.

Viewing the evidence in a light most favorable to the People (People v Contes, 60 NY2d 620), defendant's guilt as to each charge was proved beyond a reasonable doubt. Taking into account the testimony of Mendez, an expert in languages and code-breaking, and given the consistency of certain code words, it is clear that defendant was trafficking in a large-scale cocaine operation. Nor is there any doubt as to defendant's identification as the voice on the phone. Additionally, defendant's participation in a conspiracy was amply corroborated (see, People v Salko, 47 NY2d 230, 237-238) and his coconspirator's statements could be used to prove his participation in the underlying crimes. We also note that the People concede, and we agree, that the possession count should be set aside under the authority of People v Gaul (63 AD2d 563).

Defendant's motion to dismiss the indictment on both statutory and constitutional speedy trial grounds was properly denied. The six-month time period of CPL 30.30 had not run when the People announced that they were ready for trial.

Nor has defendant demonstrated the existence of a constitutional claim taking into account the factors set forth in *People v Taranovich* (37 NY2d 442).

We have examined defendant's remaining contentions and find them to be without merit. Concur—Murphy, P. J., Ross, Milonas, Kassal and Wallach, JJ.