THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PHILIP PERLMAN, Appellant.

Fourth Department, January 5, 1927.

Crimes — arson — fire occurred in defendant's store after closing hours. — People's case rested on uncertain identification of defendant as purchaser of celluloid collars found near fire and fact that he was alone in store for short time before closing and held one of two keys to store and was overinsured — defendant's evidence showed good business, good credit, good character, no financial troubles, no recent increase in insurance and presence of sprinkler system — defendant's guilt not free from doubt — instructions — judge committed prejudicial error by unduly dwelling on People's case, unfairly commenting on evidence and witnesses and, in effect, telling jury that defendant was guilty.

The conviction of the defendant of the crime of arson in the third degree must be reversed on the ground that he was not given a fair trial, since it appears

that the People's case rested on the uncertain identification of the defendant as the man who purchased a quantity of celluloid collars similar to those used in starting the fire, and on the facts that the defendant was alone in his store a short time before closing, had possession of one of two keys to the store, was overinsured, and that the store was locked when, the fire was discovered; while the defendant's evidence showed that he was a man of good character, was engaged in a fairly prosperous business, had good credit, was not in financial difficulties, had not recently increased his insurance and that there was present in the store a sprinkler fire protection system.   Under the facts outlined, it is difficult to understand how the jury could determine the defendant to be guilty beyond a reasonable doubt.

The court committed reversible error in its charge by practically assuming and telling the jury that the defendant was guilty of the crime and unfairly commenting upon the evidence and the witnesses, the result of which was undoubtedly to lead the jury to believe that, in the opinion of the court, the defendant was guilty as charged.

APPEAL by the defendant, Philip Perlman, from a judgment of the County Court of the county of Oneida, rendered on the 30th day of April, 1926, convicting him of the crime of arson, third degree.

*Searle & Searle* [*D. Francis Searle* of counsel], for the appellant.

*Charles L. DeAngelis, District Attorney,* for the respondent.

SAWYER, J.  The defendant was engaged in the business of manufacturing and selling umbrellas, both at wholesale and retail, his store and factory being at No. 9 Blandina street in the city of Utica.

Sometime between six and eight o'clock in the evening of February 19, 1926, a fire started in the rear room of the premises but when discovered had been mostly extinguished by the operation of a sprinkler system with which the store and factory were equipped.

Shortly after the discovery of the fire defendant was arrested and has since been convicted of arson upon the charge that such fire was willfully, unlawfully and feloniously set by him.

The evidence fully warranted the finding that the fire was incendiary in character but, except for a hesitant and uncertain identification of defendant as the man who earlier in the day purchased a quantity of so-called celluloid collars similar to those used in starting the fire, defendant's conviction rests entirely upon circumstances not inconsistent with innocence.  It is uncontradicted that he was alone in the place from ten minutes to six until shortly after that hour; that it was not known whether any other person was there after he left and before the fire was discovered. He also was in possession of one of the only two known keys to his store and when the fire was discovered the place was securely closed and locked.  In addition to this there was evidence that the stock and fixtures were insured for more than their value and

that the busy season had passed and his business had accordingly lessened in volume. The People's case practically rested upon such identification coupled with these facts.

As against them, defendant's whereabouts from the time he left his store shortly after six o'clock until his arrest were definitely shown as was the fact that when his employee left him at five-fifty he was actually engaged in making umbrellas. His business had been gradually increasing and, while not large, was seemingly sufficient for the support of himself and family and to enable him to keep up quite considerable quarterly payments of principal and interest upon his house. While he was indebted to his bank for money borrowed he was in no special financial difficulty, had good credit and a very considerable equity in his business as a whole. The falling off of business followed the holiday season when his sales had been large and was simply the usual off season. So far as he was permitted, it was also made evident that he was planning to continue his business and his previous good reputation was testified to by a number of witnesses of apparently good standing in the community. It was also shown in his behalf that the insurance had been carried by him at the same amount for a considerable time; that the policies were renewals of former policies and that each bore an eighty per cent coinsurance clause; that but a few days before the fire he had voluntarily inventoried his stock and turned the figures over to a clerk in one of the local banks, who was accustomed to keep his books for him, for extension and entry so that knowledge of its actual value was not confined to himself; that he had occupied the premises for several years and the sprinkler pipes and heads were in plain view so that he had knowledge of their existence and, presumably, of their object and manner of operation.

It would normally be difficult to understand how the jury, even though not satisfied of defendant's innocence, under such circumstances failed to entertain a reasonable doubt of his guilt.

Counsel for defendant urges earnestly that conviction was only obtained because in submitting the case to the jury the learned trial judge unduly emphasized the claim of the People; a careful examination of the record leads us to conclude there is force in his position. The abstract questions of law applicable to the case were accurately submitted but the comments of the court upon the facts and the method of their presentation could not but impress the jury with his belief that defendant was guilty and, the issue being so close, seriously prejudice him.

On the afternoon of the fire seventy-three celluloid or rubber collars were purchased by some one from the Alling Rubber Com-

pany and some forty similar collars, that had unquestionably been used to set the fire, were recovered from defendant's place.   While it was a fair question for the jury whether those so recovered were a part of this purchase there was nevertheless no absolute identity between them established.   In speaking of these collars, the jury was told by the court that if they believed there was any connection between the two incidents "some of that evidence is entirely destroyed;" and again, that "40 were recovered from the blaze, so that 33 collars were destroyed," whereas, the record fails to show, except by inference, that any collars were destroyed or in fact that there were ever any in the store other than those found after the fire; later in the charge the jury was told, if it was satisfied beyond reasonable doubt that Perlman bought the collars in question the court imagined there would be no trouble in finding he was the man who started the fire, " because those same collars were found there in his store," and again, " the purchaser didn't appear to be very much interested in styles, and he didn't care so much what they were.   Rather, one might imagine he was more interested in their inflammability than in their style."

It is true the jury might have found that those same collars were found in defendant's store but, as has been said, there was no direct proof of the fact, nor was there proof that the purchaser of the collars from the Alling Rubber Company was more interested in their inflammability than in their style.   The entire statement with its context comes dangerously near being an unqualified assertion that defendant was the guilty person.   Speaking of the identification of the defendant by the manager of the rubber company and the clerk who sold the collars in question, the jury was told " whether their reluctance to swear as hard as they might have and as positively as they might have arose from conscientious unwillingness to do it or from some element of uncertainty I do not know, and you will have to decide that."

At first glance this appears to be a fair statement but that it conveyed to the jury the firm belief of the court that those witnesses refused to positively identify the defendant, not because of doubt, but through mere unwillingness to do so, can hardly be gainsaid and its effect upon the jury in connection with the statement immediately following must have been disastrous to the defense, for the court says: " I would say this, gentlemen, to you, that if all the evidence in the case connecting this defendant with the crime rested upon the evidence of these two men that I would hardly advise you to convict upon that evidence alone,   *   *   *   but you have the situation of these men saying that they believe it was the defendant, and on top of that you have the other facts that I have

recapitulated, and the fact of the defendant himself being the iden-
tical man beyond the question of any argument that he was the
last in the store before this happened, the only man who could
have any possible motive, and the only man who had a key
and could get in there, and then you put these two facts together,
and then the question comes up as to whether these two make
out what to your minds, gentlemen, is satisfying evidence."

Such a statement under such circumstances in our opinion was
practically a specific direction of a verdict for the People.  The
fact as to whether defendant was the last man in that store was
one of the things the jury was called upon to determine.  Whether
any one other than defendant and his clerk were in possession of
a key which would unlock the store is allied to the same question
for the entire defense was based upon the proposition that some
one other than the defendant started the fire and in order to do
so must have entered the store after defendant left and, having
in view the condition of the store, such entry must have been
effected with a key.

Then again, the statement that the defendant was the only
man who could have had any possible motive in and of itself
practically eliminates every person other than defendant from a
guilty connection with the fire.  The defendant may possibly have
had a guilty motive but it is within the realm of possibility that
some other person also had.  In its essence that was the defense
and defendant was entitled to have a finding of the jury upon the
evidence untrammeled by such a statement from the court.  Follow-
ing the above there is reference to the fact that the store was
locked when the fire was discovered and a direct statement that
the back door was not only locked but " barricaded," although this
is attempted to be avoided by " I am not deciding that the door
was barricaded,   *   *   *   but anyway the door was locked and was
barricaded in the rear."  This standing alone could have left no other
impression than that the jury was to find that the rear door had
been both locked and barricaded for the purposes of the fire,
whereas, it was shown by several witnesses, and not denied, that
the back door was but occasionally opened and then only in summer
time and that various objects used by the defendant in his business
were usually so placed as to obstruct its operation.  Other state-
ments in the charge also bore heavily against the defendant while
but little attention was devoted to his defense and then with
emphasis upon the fact that there was a short time when con-
cededly he was in his store by himself, with a comment by the
learned judge that he did not know how long it would take " to
arrange these things there — it wouldn't take very long to put those

celluloid collars along there and start the fire. So that impresses me as being the perhaps most important matter about all of this time and the doings on the evening in question — I mean after the fire was started." This in connection with the previous statement that the court did not know how long it might have taken to fix that fire: " We do not know what *his* technique was, whether *he* used candles, or fuse or what we do not know," could have but one effect, namely, assurance that it was of no moment where defendant had spent any of the evening other than the few minutes around six o'clock when he was in the store alone and that the court was of the opinion *he* did the work although it did not know whether *he* used a candle or a fuse. The evidence doubtless warranted a submission of the defendant's guilt to the jury but he nevertheless was entitled to a fair trial " and a trial is not fair if the verdict may be related to errors in the judge's charge. Error is substantial when we can say that it tended to influence the verdict." (*People* v. *Sobieskoda*, 235 N. Y. 411, 420.)

While the expression of an opinion by the court is not necessarily fatal error and in fact cannot always be avoided in a proper presentation to the jury, nevertheless, where the balance of proof is only slightly in favor of the prosecution, and where in the interest of justice the defendant should be given another chance to prove his innocence, the court will reverse a conviction for such a cause. (*People* v. *Fisher*, 136 App. Div. 57, 60.)

From what has been said it follows that this judgment of conviction should be reversed and a new trial had.

All concur. Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Judgment of conviction reversed on the law and new trial granted.