■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELIZABETH TEETER, Appellant.—Judgment affirmed. Memorandum: The court submitted to the jury the question whether Officers Cantaben and Cotsworth were members of a conspiracy to kill the two intended victims. At the close of its instruction relating to the existence of an overt act, the court charged that if the jury found that these officers were not conspirators but that Teeter and Kropman were, and if the jury found that money was paid to Officer Cantaben by Kropman for the purpose of having the victims killed, then the payment of money would constitute an overt act and the crime would be complete. The charge was correct and by its verdict the jury found that Teeter and Kropman were the only members of the conspiracy and that the payments of money to Officer Cantaben were made for the purpose of having the intended victims killed. These findings are supported by the record. All concur, except Cardamone and Hancock, Jr., JJ., who dissent and vote to reverse the judgment and grant a new trial, in the following memorandum: Defendants were convicted of conspiracy, first degree, for allegedly having conspired together and with two police officers, Cantaben and Cotsworth, operating as undercover agents to effect the murder of two named individuals. The only acts of defendants alleged and proven as overt acts in furtherance of the conspiracy were two payments to Cantaben, one in the amount of $40 on August 1, 1975 and one in the amount of $70 on August 18, 1975. There was no suggestion in the trial that Cantaben and Cotsworth were anything other than police officers or that they were conspirators or that they at any time had criminal intent. However, even though Cantaben and Cotsworth were never in fact coconspirators, and legally could not have been (see *People v Bauer,* 32 AD2d 463, affd 26 NY2d 915; and *People v Hanley,* 92 Misc 2d 465), there was no question that the defendants believed Cantaben and Cotsworth were coconspirators. There was evidence that defendants also believed they were making the payments to Cantaben and Cotsworth as a *quid pro quo* for their agreement and for the purpose of "cementing the conspiracy" and not in furtherance thereof. *(People v Hines,* 168 Misc 453, affd on other grounds 258 App Div 466, mod 284 NY 93.) The law is well settled that "Payment of money to a coconspirator to secure his agreement to the conspiracy is regarded as an act merely cementing the conspiracy and not as an overt act committed in furtherance thereof" *(People v Wolff,* 24 AD2d 828; *People v De Cabia,* 10 Misc 2d 923, affd 8 AD2d 825, affd 7 NY2d 823, *People v Hines, supra).* The determinative test is the conspirator's purpose in making the payments, i.e. whether the payments were made as a *quid pro quo* and as a part of the agreement or "for purposes of carrying out and furthering the unlawful agreement already entered into by all parties concerned" *(People v De Cabia, supra,* p 925). The court, however, in its charge instructed the jury that "If the police officers, in other words for them to be conspirators as

alleged in the Indictment, *for the police officers to be conspirators they would have to have the criminal intent, the same criminal intent that they claim Kropman and Teeter had * * * if they had such an intent they would be conspirators.* Then the payment of the money, the $40.00 and the $70.00, if you find that happened by Kropman and Cantaben, *would not be an overt act,* because it would just be a payment of money from one conspirator to another conspirator. The law says that's not enough. *If the police officers were not conspirators, they did not have the required intent,* but you're satisfied beyond a reasonable doubt that Teeter and Kropman were and you find that money was paid to Cantaben for the purpose of having the Pruiksmas killed, *that then would be an overt act and the crime would be completed."* (Emphasis supplied.) Thus, the jury was instructed that it could find the payments to be overt acts sufficient to support a conviction provided it found that the policeman lacked criminal intent and were not in fact coconspirators even though the defendants believed they were making the payments to coconspirators. This was error. Because it defined the issue of whether or not the payments could be considered overt acts as turning on the presence or absence of criminal intent of the undercover agents (a question about which there was no dispute) without regard to the intention of the defendants in making the payments, the charge was the equivalent of an instruction that the payments, if made in connection with the planned killings, would constitute the required overt acts. In other words, the pivotal question was presented to the jury as depending upon a nonexistent issue, viz., whether or not the policemen had criminal intent, rather than upon the correct issue (see *People v Hines, supra; People v Wolff, supra*), viz., whether or not the payments were made to the policemen for the intended purpose of securing their agreements to the conspiracy. Sufficient objections were taken to the charge. Inasmuch as the issue of whether the payments could constitute overt acts was central to the case, the error cannot be considered harmless *(People v Crimmins,* 36 NY2d 230). The convictions should be reversed and a new trial granted. *(People v Perlman,* 219 App Div 196.) The majority find that the charge was sufficient because the jury was instructed that if the "money was paid to Officer Cantaben * * * for the purpose of having the victims killed, then the payment of money would constitute an overt act and the crime would be complete." We cannot agree. The charge omits the essence of the rule as stated in *People v Wolff (supra)* and *People v Hines (supra),* and the only part of the rule which could have been of benefit to the defendants: i.e., that if, conversely, the jury should find that the defendants believed they were paying the money to Cantaben for the purpose of cementing his agreement as a coconspirator, the payment could not be considered an overt act. It is in this crucial omission that the charge was fatally deficient. (Appeal from judgment of Monroe Supreme Court—conspiracy, first degree.) Present—Moule, J. P., Cardamone, Simons, Dillon and Hancock, Jr., JJ. [86 Misc 2d 532.]