THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JOHN MOE LAKOMEC, Appellant.

Third Department, April 8, 1982

**APPEARANCES OF COUNSEL**

*Boreanaz, NeMoyer & Baker (Harold J. Boreanaz* of
counsel), for appellant.

*Patrick D. Monserrate, District Attorney (Gerald Mollen of counsel), for respondent.*

OPINION OF THE COURT

MAHONEY, P. J.

In December of 1976, defendant entered into a partnership with Edward Lynch and Robert Story to purchase and operate the Parkway Tavern in Kirkwood, New York. Difficulties arose among the owners and the employees. These problems culminated in the arrest of defendant and Jeannie Mancini, a former waitress at the tavern, on October 29, 1978. Accused of conspiracy to murder Story, defendant and Mancini were charged by indictment with conspiracy in the second degree, criminal solicitation in the second degree and criminal possession of a weapon in the second degree.[1] Following the severance of Mancini's case, defendant was convicted on all three counts. He was given a 6- to 18-year sentence on the conspiracy count and concurrent indeterminate sentences of 5 and 10 years on the charges of criminal solicitation and criminal possession of a weapon, respectively.

On this appeal, defendant contends that (1) the conspiracy count of the indictment was jurisdictionally defective in that it failed to sufficiently allege an overt act in furtherance of the conspiracy, (2) hearsay declarations of Mancini were improperly introduced into evidence against defendant, and (3) the trial court's conduct in connection with a motion to set aside the verdict due to juror misconduct violated defendant's right to due process.

■ The conspiracy count of the indictment charged that defendant and Mancini "did agree with each other to cause the murder of one Robert B. Story and did enlist the aid of a third person to commit said crime". Section 105.20 of the Penal Law requires that an overt act in furtherance of the conspiracy be alleged and proved before a person can be convicted of conspiracy. Defendant argues that the conspir-

---

1. The original indictment accused defendant and Mancini with having committed first degree conspiracy and first degree criminal solicitation. These counts were later reduced to the second degree as a result of 1978 amendments to the Penal Law (L 1978, ch 422) which added two new degrees of the crimes of conspiracy and criminal solicitation.

acy count was jurisdictionally defective in that it did not allege an overt act with the factual specificity mandated by CPL 200.50 (subd 7, par [a]). We disagree. The conspiracy count of the indictment sufficiently informed defendant of each and every element of the crime being charged and defendant's remedy, if he believed the factual allegations inadequate to enable him to prepare a defense, was to request a bill of particulars pursuant to CPL 200.90 (*People v Jackson,* 46 NY2d 721; *People v Iannone,* 45 NY2d 589; see *People v Cohen,* 52 NY2d 584).

Equally unpersuasive is defendant's related contention that "enlist[ing] the aid of a third person" does not, as a matter of law, constitute an overt act committed in furtherance of the conspiracy. This contention is based on case law which holds that acts which cement the conspiratorial agreement among the participants are not done in furtherance of the conspiracy and thus do not qualify as overt acts necessary to support a conspiracy conviction (*People v Russo,* 57 AD2d 578; *People v Wolff,* 24 AD2d 828). A more recent case, however, has held that acts which may appear to be done to cement the conspiratorial agreement may constitute overt acts if the person being enlisted does not intend to become a member of the conspiracy (*People v Teeter,* 47 NY2d 1002, affg 62 AD2d 1158).

*Teeter* involved a situation where payments were made by a conspirator to an undercover agent to secure his participation in the conspiracy. The jury was instructed that although the payments could not be considered overt acts if it were found that the undercover agent was a conspirator, they could consider the payments as overt acts if it were found that the undercover agent lacked the necessary criminal intent to be a conspirator. This charge was upheld by the Fourth Department over a vigorous dissent by two Justices (*People v Teeter,* 62 AD2d 1158 [CARDAMONE and HANCOCK, JR., JJ., dissenting]). On appeal to the Court of Appeals, the issue was argued but not mentioned by the court in its affirming memorandum (*People v Teeter,* 47 NY2d 1002, *supra*).

In the instant case, the proof established that the third person whose aid was enlisted by defendant and Mancini was Clarence Courtright, a police informer. It is clear that

Courtright never intended to participate in the conspiracy and the question of his criminal intent was thus not presented to the jury. There was evidence, however, that defendant gave Courtright a gun and bullets with which to kill Story in addition to paying him $100 as partial payment for his participation. In view of this evidence and under constraint of the affirmance by the Court of Appeals in *People v Teeter* (*supra*), we hold that the jury was free to find that defendant's conduct in enlisting the aid of Courtright, who was not a conspirator, constituted an overt act committed in furtherance of the conspiracy.

Defendant's second issue concerns the propriety of the trial court's action in allowing hearsay statements by Mancini to be introduced into evidence against defendant. This issue involves a recognized exception to the hearsay rule which provides that out-of-court declarations by a conspirator, made during the course of and in furtherance of a conspiracy, are admissible against a coconspirator (*People v Berkowitz,* 50 NY2d 333, 341; *People v Salko,* 47 NY2d 230, 237; *People v Rastelli,* 37 NY2d 240, 244). Before such statements may be admitted, however, the People must establish, by independent evidence, a prima facie case of conspiracy (*People v Berkowitz, supra; People v Salko, supra,* pp 237-238). Defendant contends that the conspiracy case against him rested solely on hearsay statements made by Mancini and was not supported by any independent evidence. The People point to various items of independent proof, both real and circumstantial, which they claim amply establish the existence of a conspiracy between defendant and Mancini. We find it unnecessary to resort to a detailed examination of the evidence since the conspiracy was sufficiently established by a tape recording between defendant and Courtright.[2] In this tape, defendant acknowledged that the planned location for Story's killing had been changed, told Courtright how to dispose of the

---

2. While only a prima facie showing of a conspiracy is required before a conspirator's hearsay declarations may be admitted against a coconspirator, the trial court in this case charged the jury that they could only consider Mancini's out-of-court statements against defendant if they found the existence of a conspiracy between them "beyond a reasonable doubt". Since the People did not object to this charge, they were bound to satisfy this heavier burden (*People v Malagon,* 50 NY2d 954, 956).

gun he had been given, suggested that Courtright would be paid out of an inheritance that Mancini was to receive, and instructed Courtright to contact Mancini for payment after he had left town. We, therefore, find the requisite independent evidence of a conspiracy needed to allow Mancini's out-of-court statements to be used against defendant.[3]

Defendant's final argument concerns the manner in which a post verdict motion was handled by the trial court. Following the verdict but prior to sentencing, defendant moved to set aside the verdict pursuant to CPL 330.30 (subd 2) on the ground of juror misconduct. The basis for this motion was information obtained by defense counsel which suggested that one of the jurors, Charles Fedora, had made statements in a local bar on the morning prior to jury summations which indicated that he may have prejudged defendant's case. At the hearing which ensued, it was disclosed that the trial court, upon receiving defendant's motion papers, had ordered an investigation by the local police department, in conjunction with the District Attorney's office, of possible juror misconduct in defendant's case. No notice of this inquiry was ever given to defense counsel. The investigation involved interviews with each of the jurors and alternates in addition to six people who were thought to be witnesses to Fedora's presence in the bar at the time in question. Written statements were taken from Fedora and three of the witnesses. Notes were taken of the other interviews. The culmination of this court-ordered investigation was the presentation of an oral report to the trial court by the District Attorney prior to the hearing on defendant's motion.

Despite repeated requests by defense counsel to examine this documentary evidence, the trial court only permitted defense counsel to see the statements of Fedora and one of

**3.** We note with some concern that it is unclear from the authorities cited whether the independent proof needed to establish a conspiracy must be present in the record at the time the conspirator's hearsay statement is sought to be introduced against the coconspirator. It is our conclusion that it is sufficient if the independent showing of a conspiracy is made at any time during the trial. The ideal practice, however, in situations where it is uncertain whether the record contains independent proof of a conspiracy at that point in the trial when the People seek to introduce a coconspirator's hearsay statement, would be for the trial court to admit the statement subject to a motion to strike being made at the close of the case.

the witnesses, both of whom testified at the hearing. The trial court ruled that defense counsel could view the remaining statements only upon their being introduced into evidence as exhibits, an offer which defense counsel wisely declined without first being afforded the opportunity to examine them. Concerned that the hearing would turn on the credibility of those who testified since Fedora denied making any improper remarks, and fearful that the court might not be able to render an impartial decision on the post verdict motion due to its participation in the investigation and the likelihood that its decision might be based on information not in the record, defense counsel asked the Trial Judge to remove himself from deciding the motion. The Judge refused to do so and ultimately denied the motion to set aside the verdict.

■ The trial court's handling of the post verdict motion cannot be defended. Since motions of this kind are adversarial in nature, with the defendant having the burden of proving juror misconduct by a preponderance of the evidence (CPL 330.40, subd 2, par [g]), it is imperative that the trial court remain impartial so that it may fairly weigh the evidence introduced at the hearing. Where, as here, the trial court has conducted its own investigation with participation by the District Attorney's office and the fruits of that inquiry are withheld from defense counsel, defendant's due process right to have his motion decided by an impartial tribunal based upon the evidence presented at the hearing has been violated. The remedy for such a violation must be to remit the matter to the County Court for a new hearing on defendant's post verdict motion before a different Judge.

The decision should be withheld, and the matter remitted to the County Court of Broome County for a new hearing and determination of defendant's CPL 330.30 motion by a different Judge.

SWEENEY, KANE, WEISS and LEVINE, JJ., concur.

Decision withheld, and matter remitted to the County Court of Broome County for a new hearing and determination of defendant's CPL 330.30 motion by a different Judge.