THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v REGINA ORTIZ, Appellant.

Fourth Department, March 6, 1984

APPEARANCES OF COUNSEL

*Edward J. Nowak, Public Defender* (*Peter Braun* of counsel), for appellant.

*Howard R. Relin, District Attorney* (*Melvin Bressler* of counsel), for respondent.

### OPINION OF THE COURT

BOOMER, J.

Defendant was convicted of conspiracy in the sixth degree for hiring others who agreed to use physical force to collect a debt. On appeal she claims that the court erroneously denied her request to charge that payment of $50 to one of the coconspirators could not be considered as an overt act if it was made to cement the conspiracy or to secure the participation of a person in the agreement. We conclude that, under the facts of this case, the court was correct in refusing to charge as requested.

The record shows that defendant contacted Lang, a private investigator, to engage his services to collect $800 from one Zugehoer, which amount Zugehoer owed to defen-

dant as the result of a drug transaction. Lang became suspicious and reported the matter to the police. At the direction of the police, Lang and an undercover officer, Kilborn, met with defendant. At the meeting, defendant told Lang she wanted to collect the money and she wanted Zugehoer and his wife "slapped around" but not killed. Lang agreed to collect the money for a fee of $50 and a handgun and defendant agreed to pay the fee plus a bonus of $100 if Zugehoer was "put in the hospital". Since Lang expressed concern about payment of his fee, defendant agreed to make a down payment the following day. The following day defendant gave Kilborn $50 in cash.

An essential element of the crime of conspiracy is an "overt act * * * committed by one of the conspirators in furtherance of the conspiracy" (Penal Law, § 105.20). The overt act alleged in the indictment and relied upon by the prosecution was the payment of $50 to Kilborn. At trial, defendant requested the court to instruct the jury that "an overt act cannot be an act which merely cements the agreement or secures the participation of a person in the agreement". The court refused the request and charged instead that "an overt act is any step or conduct taken by one of the conspirators to achieve or carry forward the purpose or the objective of the conspiracy." Defendant claims that the court erred in refusing to charge as requested, citing *People v Hines* (168 Misc 453, affd 258 App Div 466, mod 284 NY 93), *People v De Cabia* (10 Misc 2d 923, affd 8 AD2d 825, affd 7 NY2d 823), *People v Wolff* (24 AD2d 828), and *People v Teeter* (86 Misc 2d 532, affd 62 AD2d 1158, affd 47 NY2d 1002). Language in those cases lends support to defendant's claim.

In *People v Hines* (*supra*), defendant moved to dismiss the indictment charging conspiracy on the ground that it did not sufficiently allege an overt act. The conspiracy charged was to contrive a lottery. The overt acts on the part of defendant alleged in the indictment were that he met with others and discussed plans to influence and bribe judicial officers and that at the same time one of the conspirators, Dutch Schultz, paid him $1,000 in cash. In ruling on the motion to dismiss the court stated, "The first 'overt act' is really a part of the conspiracy, looking toward

action in the future, and is not properly an overt act. The receipt by Hines of a payment of $1,000 cash, although alleged as an overt act, is not such, but something done as a part of the agreement to cement the conspiracy" (168 Misc 453, 457, *supra*). Nevertheless, the court declined to dismiss the indictment, since the defendant could be held responsible for overt acts committed by other conspirators. After trial, the Court of Appeals reversed the conspiracy conviction (284 NY 93, *supra*) on the ground that the action was barred by the Statute of Limitations since all of the overt acts alleged in the indictment were committed more than two years before the commencement of the action. The court indicated that evidence of payments of $1,000 a month to defendant within the two-year period of limitations would not support the conviction since those payments were not alleged in the indictment.

The dictum of the trial court in *People v Hines (supra)* was first discussed in *People v De Cabia* (10 Misc 2d 923, 925, *supra*). There, County Court ruled on a motion to dismiss a conspiracy indictment for failure to allege an overt act. The indictment stated that the defendants gave money to a coconspirator for the purpose of bribing a public officer. This, the court held (p 925) was an "allegation of a subsequent, independent, overt act following an unlawful agreement." Distinguishing *Hines,* the court stated (p 925) that Hines received the money "as a *quid pro quo*" and "as a part of the agreement to cement the conspiracy", while the money received by De Cabia was "for purposes of carrying out and furthering the unlawful agreement already entered into." Both the Appellate Division and the Court of Appeals affirmed without opinion.

The language in *Hines (supra)* was repeated in *People v Wolff* (24 AD2d 828, *supra*), where our court wrote, "Payment of money to a co-conspirator to secure his agreement to the conspiracy is regarded as an act merely cementing the conspiracy and not as an overt act committed in furtherance thereof." The court held that the allegation in the indictment that a payment of money was made " 'for the purpose of securing the services of a person * * * to perform an illegal abortion' " sufficiently alleged an overt act. The court cited *People v De Cabia (supra)* to the effect that "if

the money is paid to a co-conspirator to be delivered to another in payment of the services constituting the principal crime, such payment is held to constitute an overt act".

In *People v Teeter* (86 Misc 2d 532, affd 62 AD2d 1158, affd 47 NY2d 1002, *supra*) defendants Teeter and Kropman were charged with agreeing with one another and with undercover police officers to kill two intended victims. The alleged overt act was the delivery of money to one of the undercover officers as part payment for the murders. Citing *People v Wolff* (*supra*), the trial court held that the indictment alleged "payment to a coconspirator, not to be paid to another for services but for the coconspirator and, therefore, would not constitute an overt act such as is required by law" (86 Misc 2d 532, 534, *supra*). Following that reasoning, the court charged the jury that if the police officers intended to perform the agreement they were coconspirators and payment to them would not be an overt act, but if the police officers did not intend to perform, they were not coconspirators and payment to them would constitute an overt act. The Appellate Division, over a strong dissent, affirmed, stating that the charge was correct. The dissenting Justices, citing *People v Wolff* (*supra*), wrote that the issue of whether payment to the undercover officers was an overt act should turn not upon the presence or absence of criminal intent of the officers, but upon the intention of the defendants in making the payment. They concluded that the trial court committed reversible error in refusing to charge in accordance with *People v Wolff* (*supra*) since "[t]here was evidence that the defendants also believed they were making the payments to [the officers] as a *quid pro quo* for their agreement and for the purpose of 'cementing the conspiracy' and not in furtherance thereof" (62 AD2d, at p 1158).

The Court of Appeals affirmed the conviction of Teeter, but reversed the conviction of her codefendant, Kropman. The court adopted the unilateral theory of conspiracy stating that "a defendant may be guilty of criminal conspiracy even though his only coconspirator feigned agreement and, therefore, did not share defendant's criminal intent" (47 NY2d 1002, 1003, *supra*). Kropman's conviction was reversed because the Trial Justice charged the jury that it

could not convict one defendant and acquit the other. The charge was erroneous since the jury could have found that Teeter conspired with the police officers and not with Kropman and that Kropman had not conspired with anyone. Teeter's conviction was affirmed because she did not object to the charge in that respect.

Before the Court of Appeals, defendant Teeter had argued that the trial court erred in its charge concerning payment as an overt act and that no overt act was alleged or proved inasmuch as payment to the undercover officer was made to "cement a perceived agreement". The Court of Appeals did not address those arguments in its memorandum.

*People v Teeter* (*supra*) was discussed in *People v Lakomec* (86 AD2d 77, 79) where the court construed *Teeter* as holding that "acts which may appear to be done to cement the conspiratorial agreement may constitute overt acts if the person being enlisted does not intend to become a member of the conspiracy".

Language in the cases cited by defendant has created confusion in the interpretation and application of the rule stated in *People v Hines* (*supra*) and *People v Wolff* (*supra*). We agree with the statement in *People v Wolff* (24 AD2d 828, *supra*) that "[p]ayment of money to a co-conspirator to secure his agreement to the conspiracy" is not an overt act in furtherance thereof. An act cannot be said to have been committed "in furtherance of the conspiracy" (Penal Law, § 105.20) until a conspiracy has been formed. We disagree with the cases insofar as they indicate that payment to a coconspirator for his services in carrying out the object of the conspiracy is an act merely cementing the conspiracy and not an overt act.

In interpreting and applying the rule, consideration must be given to the function of the overt act. "The function of the overt act in a conspiracy prosecution is simply to manifest 'that the conspiracy is at work,' *Carlson* v. *United States,* 187 F.2d 366, 370, and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence" (*Yates v United States,* 354 US 298, 334; see, also, 61 Col L Rev 957, 1002). The overt act "signals the intent to move the project

forward from talk to action" (32 Brooklyn L Rev 257, 264). The act "merely provides corroboration of the existence of the agreement and indicates that the agreement has reached a point where it poses a sufficient threat to society to impose sanctions" (*People v McGee,* 49 NY2d 48, 58).

Any act committed in furtherance of the conspiratorial agreement which evidences the existence of the agreement fulfills the function of the required overt act. Thus, in determining whether payment of money is an overt act, it should make no difference to whom the money is paid or whether the payee shares the payer's criminal intent. The determining factor ought to be the purpose of the payment — whether to secure agreement of the coconspirator or whether to further the object of a conspiratorial agreement already formed. We hold, therefore, that payment to a person to secure his agreement to a conspiracy is not an overt act, but once agreement has been reached, payment to a coconspirator for his prospective services in carrying out the object of the conspiracy is an overt act.

Applying the rule to the facts of this case, we conclude that the payment of money to the undercover officer was an overt act. It was not made to secure the officer's agreement to the conspiracy, for he had already agreed the day before. The fact that Lang and Kilborn were not to perform the agreement until the payment was made does not disqualify the payment as an overt act. The payment served as corroboration of the agreement and set the conspiracy in motion. Once it was made, "the agreement ha[d] reached a point where it pose[d] a sufficient threat to society to impose sanctions" (*People v McGee,* 49 NY2d 48, 58, *supra*). The only reasonable inference to be drawn from the record is that the payment of $50 to Kilborn was not for the purpose of inducing him to join the conspiracy but for the purpose of furthering the object of the agreement. Hence, the court properly refused to charge as defendant requested.

Our holding is consistent with the decision of the Court of Appeals in *Teeter* (47 NY2d 1002, *supra*). The indictment in *Teeter,* similar to the indictment here, alleged that defendant paid to an undercover officer "the sum of $40 in United States currency as a downpayment for the murder

of the [intended victim] to be applied against a total sum of $1000." In *Teeter* (*supra*), as here, the officers agreed to perform for a specific price and defendant agreed to pay the price, although nothing was to be done until defendant made a down payment. By affirming Teeter's conviction, the Court of Appeals rejected her argument that the payment alleged was an act merely cementing the agreement and not an overt act in furtherance of the conspiracy.

Accordingly, the judgment should be affirmed.

DOERR, J. P., GREEN, O'DONNELL and SCHNEPP, JJ., concur.

Judgment unanimously affirmed.