THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCIS BONGARZONE, Appellant.

Second Department, March 31, 1986

APPEARANCES OF COUNSEL

*Mahler & Harris, P. C. (Stephen R. Mahler* of counsel), for appellant.

*Elizabeth Holtzman, District Attorney (Barbara D. Underwood, Michael Gore* and *Andrew J. Frisch* of counsel), for respondent.

**OPINION OF THE COURT**

Brown, J.

This case arises out of the defendant's conviction of various crimes resulting from the operation of a motor vehicle involved in a fatal accident. We are asked on this appeal to

review a number of issues, including whether the People established the commission of an overt act necessary to sustain the defendant's conspiracy conviction based upon an attempt to murder a key witness to the accident and whether Criminal Term properly admitted into evidence the recorded conversations of the defendant's mother as a coconspirator.

The defendant was charged under three separate indictments with a variety of offenses, including leaving the scene of an accident without reporting as a felony, falsely reporting an incident in the third degree, unauthorized use of a motor vehicle in the third degree, criminal solicitation in the second degree, and conspiracy in the fourth degree. The charges arose initially out of a single-vehicle accident in which a stolen car, allegedly being driven by the defendant, collided with a utility pole, killing two of the passengers in the vehicle and injuring the others. The defendant, it was charged, fled from the scene to a nearby motel where, rather than reporting the accident to the police, he falsely reported that he had been injured during a robbery. However, one of the passengers, Lynn Zachareas, who had reported the accident to the police, went to the motel and informed the police that the defendant had been driving the vehicle. This led to the first series of charges against the defendant.

Subsequently, while incarcerated and awaiting trial on the charges arising out of the accident, the defendant allegedly conspired with a fellow inmate, Thomas Moore, to arrange for the murder of Ms. Zachareas. As it turned out, however, Moore, who had no intention of actually aiding the defendant, contacted the authorities and agreed to cooperate with them. With Moore's assistance, the defendant was placed in contact with an undercover police officer, Detective Daniel Pantano, who posed as a hired killer. Through Moore, the defendant provided Pantano with the telephone numbers of his mother and sister. During one conversation, the defendant informed Pantano that he should contact his mother and that he, the defendant, would call her and instruct her to arrange to meet with Pantano to provide him with the address and a photograph of the intended victim, as well as an initial payment against the agreed price for the killing. Pantano later spoke to both the defendant's mother and his sister regarding arrangements to obtain the photograph and the money, but no meeting ever actually took place. Based upon these events, however, the defendant was charged, *inter alia,* with the crimes of conspiracy and criminal solicitation.

Thereafter, the indictments were consolidated pursuant to *CPL* 200.20 (2) (b); (4) and (5), and, following trial, the jury returned a verdict finding the defendant guilty of the crimes of unauthorized use of a motor vehicle in the third degree, leaving the scene of an accident without reporting as a felony, falsely reporting an incident in the third degree, criminal solicitation in the second degree, and conspiracy in the fourth degree.

Initially, the defendant argues that his guilt of the crime of criminal solicitation in the second degree was not established beyond a reasonable doubt. We disagree. "A person is guilty of criminal solicitation in the second degree when, with intent that another person engage in conduct constituting a class A felony, he solicits, requests, commands, importunes or otherwise attempts to cause such other person to engage in such conduct" (Penal Law § 100.10). Viewing the evidence presented to the jury in the light most favorable to the People, as we must, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt *(see, People v Malizia,* 62 NY2d 755, *cert denied* — US —, 105 S Ct 327; *People v Contes,* 60 NY2d 620). The evidence reveals that the defendant provided telephone numbers to Moore so that the purported contract killer could arrange with the defendant's mother and sister for the payment of a fee and for the receipt of information to aid the killer in locating the prospective victim. He also suggested to Moore a possible method that the killer might use (a poisoned heroin injection), to make it appear as though the death was an accident. Moreover, from the defendant's conversations with Detective Pantano, the jury could have reasonably concluded that the defendant believed that he had reached an agreement with Pantano to the effect that Pantano would commit the murder on his behalf. In sum, there is sufficient evidence in the record from which the jury could have concluded that the defendant solicited Detective Pantano to intentionally murder Lynn Zachareas *(see,* Penal Law § 125.25 [1]) and therefore could have found that the defendant was guilty of the crime of criminal solicitation in the second degree *(see,* Penal Law § 100.10).

The defendant also contends that the People failed to prove his guilt of the crime of conspiracy in the fourth degree. Specifically, the defendant claims that the People failed to establish that he performed an overt act in furtherance of the conspiracy, an essential element of any conviction for the

crime of conspiracy *(see,* Penal Law § 105.20). Again, we disagree. Once a conspiratorial agreement is established, the People must prove an overt act by one of the conspirators. Such proof need not be by direct evidence but may be established circumstantially *(see, People v Mackell,* 47 AD2d 209, 213, *affd* 40 NY2d 59). The purpose of the overt act requirement in conspiracy prosecutions is both to provide corroboration of the existence of the agreement to commit a crime, as well as to establish that the conspiracy has gone forward to an extent that it poses a sufficient threat to society to call for penal sanctions *(see, People v McGee,* 49 NY2d 48, *cert denied sub nom. Quamina v New York,* 446 US 942; *People v Menache,* 98 AD2d 335).

The overt act alleged at bar was a telephone call placed by the defendant to his mother instructing her to provide a photograph of Ms. Zachareas to Detective Pantano. Clearly, a telephone conversation may constitute an overt act in furtherance of a conspiracy, provided it is an independent act which tends to carry out the conspiracy and is not simply a conversation in which the conspirational agreement is reached *(see, People v Kellerman,* 102 AD2d 629; *cf. People v Menache, supra).* The telephone conversation alleged to have occurred at bar clearly fits under the former category since its purpose was not merely to arrange for the payment of money to the hired killer to secure his agreement to murder the intended victim, but also to place a photograph and other information identifying the victim into the killer's hands and thus to carry forward the object of the conspiracy *(see, People v Ortiz,* 100 AD2d 6; *People v Menache, supra).*

Generally, under the so-called state of mind exception to the hearsay rule, a trier of facts may infer from a declarant's statement of intention to perform a subsequent act that the act was in fact performed *(see, Mutual Life Ins. Co. v Hillmon,* 145 US 285). Some criticism has, however, developed over the admissibility of such declarations, particularly in the context of criminal proceedings, where the inference sought to be drawn implies some conduct on the part of one other than the declarant or to some extent requires that individual's cooperation *(People v Malizia,* 92 AD2d 154, 159, *affd* 62 NY2d 755, *cert denied* — US —, 105 S Ct 327, *supra).* This situation commonly presents itself where the declarant states his intention to meet—or, as here, place a telephone call to—a third person. It has been held, however, that a declaration made by such an individual may properly be received in evidence

"where the statement is made under circumstances that make it probable that the expressed intent [is] a serious one, and that it [is] realistically likely that" the meeting or conversation will in fact take place *(People v Malizia,* 92 AD2d 154, 160, *supra; see also, United States v Pheaster,* 544 F2d 353, *cert denied sub nom. Inciso v United States,* 429 US 1099). At bar, the expressed intent was clearly serious given the subject matter of the declaration. Further, the defendant's explicit statement to Detective Pantano that he would place the telephone call to his mother immediately and that Pantano should contact her at a specified time, made it likely that such a telephone call would be placed. Moreover, the contents of the recorded telephone conversation that Pantano thereafter had with the defendant's mother indicates that the defendant's mother understood that she was supposed to provide Pantano with a sum of money and a photograph of the intended victim. Thus, under the circumstances of this case, the jury could properly infer that the defendant acted in accordance with his expressed intention to call his mother and instruct her to secure the money and the photograph for Pantano.

The defendant further argues that it was improper to admit into evidence the recorded conversation between his mother and Detective Pantano since the People had failed to establish a prima facie case of conspiracy independent of this conversation. A well-recognized exception, however, to the hearsay rule barring the use of an admission by one defendant against a codefendant *(see, People v Payne,* 35 NY2d 22, 27) is the principle that any declaration by a coconspirator made during the course of and in furtherance of the conspiracy is admissible against any other coconspirator *(see, People v Sanders,* 56 NY2d 51; *People v Salko,* 47 NY2d 230). Such a hearsay declaration of a coconspirator may be admitted into evidence only upon a showing that a prima facie case of conspiracy has been established *(see, People v Sanders, supra; People v Malagon,* 50 NY2d 954; *People v Salko, supra; People v Centore,* 110 AD2d 903). Such a prima facie showing must be based upon evidence independent of the declaration sought to be introduced *(see, People v Salko, supra).* As noted, the existence of the conspiracy need not be based entirely upon direct evidence but may be established circumstantially *(see, People v Mackell,* 47 AD2d 209, 213, *affd* 40 NY2d 59, *supra).* We are satisfied that the evidence in the record, independent of the content of

the conversation between Pantano and the defendant's mother, established a prima facie case of conspiracy.

The People established that the defendant agreed with Moore and Pantano to arrange for the contract murder of the witness. They also established that the defendant gave telephone numbers to Moore and Pantano to enable Pantano to contact the defendant's mother or sister to obtain money and information about the prospective victim. We would note that this act of giving the telephone numbers to these coconspirators, while not the specific overt act alleged in the indictment, would also be an overt act in furtherance of the conspiracy *(see, People v Menache,* 98 AD2d 335, *supra).* In any event, the record also establishes that following the conversations among the defendant, Moore and Pantano evidencing an unlawful agreement, the defendant committed the overt act alleged in the indictment, to wit, the call to his mother.

While the contents of the conversation between Pantano and the defendant's mother serve to buttress the conclusion that the defendant did call her and solicit her aid and participation in the conspiracy, the fact that he made the call could be also inferred from other evidence, independent of that conversation. There is sufficient evidence in the record independent of that conversation to establish a prima facie case of a conspiracy among the defendant, his mother and sister, Moore, and Pantano. Therefore, the disputed conversation was properly admitted into evidence *(see, People v Salko,* 47 NY2d 230, *supra; People v Lakomec,* 86 AD2d 77).

Next, the defendant argues that the trial court should have granted his motion to sever the previously consolidated indictments. Prior to the trial, the indictments were consolidated pursuant to CPL 200.20 (2) (b), which provides that two offenses, even though based upon different criminal transactions, are joinable where they are of such nature that either proof of the first offense would be material and admissible as evidence-in-chief upon a trial of the second, or proof of the second would be material and admissible as evidence-in-chief upon a trial of the first. Clearly, in the instant case, the evidence relating to the events surrounding the automobile accident was material and admissible to establish motive at the trial of the offenses relating to the criminal solicitation and conspiracy. Similarly, the evidence relating to the criminal solicitation and conspiracy was relevant to the offenses arising out of the automobile accident. Therefore, there was sufficient basis for the court, in the exercise of its discretion,

to order the consolidation of the indictments for trial. While the defendant may have suffered some prejudice by virtue of the admission of evidence of the details of the automobile accident at the trial of the conspiracy and criminal solicitation charges, that evidence was clearly material and probative on those latter charges to show the defendant's motive and intent to arrange for the murder of the intended victim, or otherwise prevent her from testifying against him (see, People v Molineux, 168 NY 264). Similarly, while the evidence of this latter, more serious set of crimes may have had a prejudicial effect upon the defendant's trial on the charges relating to the accident, they were nonetheless probative of his consciousness of guilt of those charges (see, People v Leyra, 1 NY2d 199; People v Barksdale, 100 AD2d 852; People v Potter, 50 AD2d 410). Therefore, we find that the decision to consolidate the indictments did not constitute an abuse of Criminal Term's discretion.

■ With respect to the defendant's argument that his recorded conversations with Detective Pantano were obtained in violation of his right to counsel on the earlier charges (see, Maine v Moulton, 474 US —, 106 S Ct 477; Mealer v Jones, 741 F2d 1451, cert denied — US —, 105 S Ct 1871), that contention, although raised for the first time on appeal, is nonetheless reviewable as a matter of law (see, People v Cullen, 50 NY2d 168; People v Donovon, 107 AD2d 433, 440). It is clear from the record that these recorded conversations were obtained in violation of the defendant's right to counsel on the earlier charges, since the police knew at the time the conversations were recorded that the defendant was incarcerated awaiting trial on those charges, and thus were aware that his right to counsel on those charges had attached (see, Maine v Moulton, supra; Brewer v Williams, 430 US 387; People v Short, 110 AD2d 205). A review of the contents of the conversations, however, indicates that they concerned only the later crimes relating to the conspiracy and the solicitation to commit murder. The conversations may only be said to be incriminating with respect to the earlier charges in that, along with all of the other evidence relating to the conspiracy and the solicitation to commit murder, they were some evidence of the defendant's consciousness of guilt. In light of the other overwhelming evidence of the defendant's guilt of the earlier crimes, we are satisfied that the admission of the recorded conversations during the joint trial was harmless beyond a reasonable doubt (see, Chapman v California, 386 US 18).

Finally, we have considered the defendant's remaining argument with respect to the sentence imposed and find it to be without merit *(see, People v Suitte,* 90 AD2d 80).

Accordingly, the judgments of conviction should, in all respects, be affirmed.

LAZER, J. P., BRACKEN and LAWRENCE, JJ., concur.

Judgment of the Supreme Court, Kings County, rendered February 23, 1984, affirmed.