*759 OPINION OF THE COURT
Edward H. Lehner, J.
This is an action to replevy a 1981 Porsche automobile and recover $65,000 in cash seized from plaintiff in connection with his arrest on charges of criminal possession of a controlled substance and reckless endangerment.
THE MOTION
Defendant, the Property Clerk of the New York City Police Department, moves for summary judgment dismissing the complaint and for judgment on three related counterclaims seeking forfeiture of the above property. As to the vehicle, it is claimed that it was used by plaintiff "to facilitate the purchase and/or sale of a controlled substance in violation of Public Health Law § 3388.” It is also claimed that, since it was used "as a means of committing, aiding and furthering” said crime, plaintiff is not a proper claimant of the vehicle under section 14-140 of the Administrative Code of the City of New York (formerly § 435-4.0). The money seized is claimed to be "the proceeds of crime, was derived through crime and had been used as a means of aiding and furthering a crime” and therefore plaintiff is allegedly not a proper claimant under the Administrative Code.
Plaintiff cross-moves for summary judgment or, alternatively, for a trial on the ground that issues of fact remain.
FACTS
Sometime in July of 1984 plaintiff, a college student living in Long Island and working part time as a bartender, telephoned one "Tony” in Florida with the hope of using $50,000 in his possession to become involved in the sale of drugs. Although negotiations were carried on through at least two telephone conversations and plaintiff’s two trips to Florida in order to meet Tony, plaintiff asserted at his examination before trial that no deal was consummated. The reason, it is claimed, is that plaintiff was too scared.
On July 26, 1984 plaintiff and two passengers in his car were arrested in Brooklyn and charged with criminal possession of a controlled substance and reckless endangerment. The arrest was effected only after a chase by an unmarked police car. Plaintiff claims that the officers did not identify themselves as police and he was unaware who they were until a *760 red flasher was placed atop the unmarked vehicle and plaintiff’s car was blocked by a marked patrol car. He claims to have fled (at 30 miles per hour) because he had his money in the trunk of the car and feared that the men in the unmarked car were going to rob him. The arresting officer, however, states that he identified himself as a police officer and ordered plaintiff to stop his car, after which plaintiff fled. The pursuit, says the officer, was of a "speeding Porsche through several red lights.”
As the Porsche came to a stop, 13 glassine envelopes, later found to contain heroin, were thrown from its passenger window. The search of the vehicle revealed a trunk containing, among other things, $64,580 in cash.
CONTENTIONS OF THE PARTIES
Plaintiff has stated in his examination that he did not purchase any drugs on the date in question, that he did not see the envelopes being thrown out the window, and that he first learned "about a week later in court” that 13 glassine envelopes had been found. Plaintiff contends that since the drugs were thrown from the passenger window while he was driving, there is no indication that he possessed any drugs. This, it is claimed, must be shown in order to sustain the forfeiture of the vehicle. Defendant asserts, however, that plaintiff knew there was heroin in his car and probably told one of his passengers to throw it out the window.
With respect to seizure of the money plaintiff argues that his conduct in this State must be sufficient to uphold a criminal conviction in this jurisdiction. He contends that his telephone conversations and meetings in Florida fail to constitute either an attempt to possess or sell drugs, a conspiracy to do so, or a solicitation of such crime. Defendant insists that plaintiff’s conduct was sufficient to constitute the above crimes.
DISCUSSION
Forfeiture of the vehicle is predicated on both the Public Health Law and the New York City Administrative Code. Under section 3388 (6) (a) of the Public Health Law, plaintiff may assert the affirmative defense that the use of the vehicle to facilitate the purchase or sale of a controlled substance was not intentional on his part. The defense of unintentional use has been held to apply to section 14-140 of the Administrative *761 Code as well. (Chmielewski v Rosetti, 59 Misc 2d 335 [App Term, 2d Dept 1969].) With respect to the vehicle, the dispute focuses on the applicability of this defense.
Plaintiff has admitted knowing that one of his passengers used heroin, that the other passenger could be assumed to be a heroin user, and that on other occasions he had purchased drugs in the neighborhood where he was arrested. Defendant asserts that this, in addition to the inference of guilt from his flight, suggests that plaintiff knew that there was heroin in his car. On the other hand, plaintiff has denied such knowledge, though somewhat equivocally. Ordinarily, the issue of whether plaintiff had the requisite knowledge would create a triable issue precluding summary disposition.
However, plaintiff’s asserted ignorance of the drugs in his car is relevant only to his defense under the Public Health Law. Since forfeiture may be obtained under the Administrative Code (§ 14-140 [b]) where property is employed "in aid or furtherance of crime” (emphasis supplied), and is not limited to felonies or drug offenses, the proffered defense is irrelevant where the existence of another crime is apparent. (Cf, CPLR art 13-A; Public Health Law § 3388.)
From the record herein there is no question that plaintiff pleaded guilty to the crime of reckless endangerment in connection with the car chase preceding his arrest, in satisfaction of both reckless endangerment and drug charges. Although defendant’s first and second counterclaims allege that the forfeiture is predicated upon drug-related offenses, judgment may be granted on the unpleaded allegation of reckless endangerment, since plaintiff acknowledges such plea in his moving papers and he has not been misled to his prejudice. (See, Costello Assocs. v Standard Metals Corp., 99 AD2d 227, 229 [1st Dept 1984], appeal dismissed 62 NY2d 942.)
Furthermore, even as to the attempted criminal possession of a controlled substance, plaintiff’s deposition testimony admits such attempt and no triable issue has been raised regarding said crime.
Forfeiture of the money is sought pursuant to the Administrative Code as (1) "proceeds of a crime” or as (2) "having been used as a means of aiding and furthering a crime, namely the purchase and/or sale and possession of illegal narcotics.” Much of the examination of plaintiff was concerned with these two issues as defendant sought to determine the source of the funds in order to ascertain whether the money constituted *762 "proceeds”, as well as to determine whether the funds were the same as those transported from New York to Florida in the aborted drug transaction with Tony (and therefore used in "aiding and furthering” the crime). In his deposition plaintiff acknowledged that the money found in the trunk of his car at the time of his arrest was the same money he took with him to Florida and showed Tony.
Plaintiff purported to identify the banks from which the money had been withdrawn, asserting that the source of the funds was an inheritance. On this motion for summary judgment, defendant has failed to question plaintiff’s credibility or offer an alternative theory as to the source of the funds. There is therefore no issue as to whether the money constituted proceeds from prior sales of drugs.
Plaintiff advances a two-pronged argument with respect to his alleged use of the money in aid and furtherance of a crime. First, with respect to the unexecuted drug transaction in Florida, plaintiff contends that his alleged conduct in New York was insufficient to constitute a crime in this State. He relies upon People v Werblow (241 NY 55 [1925]) in which it was held that New York lacks jurisdiction over a crime consummated elsewhere if the conduct in this State does not reach the point of an attempt to commit the crime. Second, plaintiff argues that even if New York did have jurisdiction over such crime, the money is not necessary to prove the intent or the overt act essential to proof of a conspiracy, and therefore the money was not employed in aid or in furtherance of that crime.
Defendant argues that plaintiff’s acts did confer jurisdiction on New York over the alleged crimes, in accordance with the provisions of CPL 20.20, which was added in 1970, and provides in relevant part, as follows:
"[A] person may be convicted in the criminal courts of this state of an offense defined by the laws of this state, committed either by his own conduct or by the conduct of another for which he is legally accountable * * * when:
"1. Conduct occurred within this state sufficient to establish:
"(a) An element of such offense; or
"(b) An attempt to commit such offense; or
"(c) A conspiracy or criminal solicitation to commit such offense, or otherwise to establish the complicity of at least one of the persons liable therefor; provided that the jurisdiction accorded by this paragraph extends only to conviction of those *763 persons whose conspiratorial or other conduct of complicity occurred within this state”.
Thus, as appears from this statute, in order to hold plaintiff criminally liable in connection with the aborted Florida drug transaction, his conduct in New York must have been sufficient to establish at least 1 of 3 possible anticipatory offenses with respect to the object crime of criminal possession of a controlled substance: (1) attempt, (2) conspiracy, or (3) solicitation.
"A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.” (Penal Law § 110.00.) "In addition to proof of intent to commit a specific crime (People v Kane, 161 NY 380), the statute requires a showing that defendant committed an act or acts that carried the project forward within dangerous proximity to the criminal end to be attained” (People v Warren, 66 NY2d 831, 832 [1985]).
In Warren (supra) the defendants had been charged with attempt to commit the crime of criminal possession of a controlled substance. Defendants were arrested after meeting with an informant and an undercover police officer for the purpose of purchasing cocaine. At the meeting, defendants agreed upon the price and packaging of the cocaine and examined samples of the drug. Rather than complete the purchase at that time, they then agreed to do so hours later in another part of town. In addition, the transaction was to take place only after the drug had been tested. At the time of their arrest, defendants lacked sufficient funds to make the purchase and the undercover police officer lacked sufficient cocaine to make the sale. The court affirmed dismissal of the indictment, holding that there had been no attempt since "defendants did not come very near to the accomplishment of the intended crime” since "several contingencies stood between the agreement * * * and the contemplated purchase.” (Supra, 66 NY2d, at 833.)
In the case at bar, plaintiff’s conduct in this State did not proceed beyond mere preparation, the object crime being much farther from fruition than in Warren (supra). Thus, there has been no attempt to commit the crime in New York so as to confer jurisdiction under CPL 20.20 (1) (b).
CPL 20.20 (1) (c), in according New York jurisdiction over a crime consummated elsewhere by reason of conduct in New *764 York amounting to conspiracy or solicitation, substantially changed the law as it had been stated in People v Werblow (supra). (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 20.20 [1], at 80.) It must therefore be determined whether plaintiff’s conduct in New York, even though insufficient to constitute an attempt, amounted to either conspiracy or solicitation.
Section 105.00 of the Penal Law provides, in relevant part, that "[a] person is guilty of conspiracy * * * when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct.” Penal Law § 105.20 provides further that "[a] person shall not be convicted of conspiracy unless an overt act is alleged and proved to have been committed by one of the conspirators in furtherance of the conspiracy.”
A review of plaintiff’s deposition reveals that his conduct in New York was sufficient to constitute a conspiracy. During his first telephone conversation with Tony, plaintiff admits telling him that he "had some money” and "was thinking about going down to purchase some drugs”. At one point he claims to have told Tony that he was afraid to consummate a drug deal, while at another point he denied making such statement. Plaintiff claims that the remainder of this conversation was that he "just wanted to meet with him”. By itself, this conversation does not clearly indicate the existence of an agreement. However, sometime after this first telephone conversation, a meeting was held in Florida between plaintiff and Tony, at which an agreement was reached. This meeting was followed by further telephone conversations which plaintiff claims were "just to confirm the date” of the next meeting in Florida. Thereafter plaintiff returned to Florida with the money. The only reasonable view of this conduct is that, by confirming the date of the next meeting, what had until then been a tentative agreement now became a firm one. The process of agreement therefore took place in and was cemented by the conversations in New York.
Also, it is clear that an overt act in furtherance of the conspiracy took place in New York. The overt act of a conspiracy " 'signals the intent to move the project forward from talk to action’ * * * [It] 'merely provides corroboration of the existence of the agreement and indicates that the agreement has reached a point where it poses a sufficient threat to society to impose sanctions’ ” (People v Ortiz, 100 AD2d 6, 10-11 [4th Dept 1984]).
*765 It has been held that a telephone conversation may constitute an overt act in furtherance of a conspiracy when the conversation takes a step toward execution of the conspiracy and is not simply a part of, or cementing, the agreement itself. (People v Menache, 98 AD2d 335, 337-338 [2d Dept 1983]; People v Bongarzone, 116 AD2d 164, 169 [2d Dept 1986]; People v Kellerman, 102 AD2d 629 [3d Dept 1984].) Whether the conversation is independent of the agreement is to be determined from its context and content. (People v Menache, supra, at 337.) In the case at bar, plaintiff states that his conversations with Tony merely confirmed the date of their second meeting. Since the contents of such conversations are not clear, it cannot be determined whether the discussions went beyond the agreement.
However, plaintiff’s second trip, departing from New York to go to Florida with $50,000 in his knapsack, is conduct referable to the object of the conspiracy, and therefore constitutes the necessary overt act in this case.
Inasmuch as it has been determined that plaintiff’s conduct in this State constituted conspiracy, it is unnecessary to consider whether or not it constituted a criminal solicitation as well.
With respect to the use of the money "in aid or furtherance” of crime, there is no statutory definition in the Administrative Code delineating the nexus that must exist between the property and the crime it allegedly aided.
CPLR 1310 (4), enacted after the Administrative Code provision under discussion, defines property which may be seized as an "Instrumentality of a crime” as "any property * * * whose use contributes directly and materially to the commission of a crime”. In Dillon v Ferrandino (132 Misc 2d 334 [Nassau County Ct 1986]), a corporation which had been used as a front for illegal drug sales, wherein the defendant procured the drugs and paid for them in the corporate name, was held to be an "instrumentality of a crime” since it contributed directly and materially to the illicit activity.
. The CPLR criterion for "instrumentality” is instructive with respect to the meaning of "in aid or furtherance” under the Administrative Code. In order to be subject to forfeiture, it is not necessary that the property be an essential element of the crime or that its use be necessary to prove the crime. All that is required is that, borrowing from what is made explicit in the CPLR, the property "contributes directly and materially” to the crime.
*766 In the case at bar, plaintiff displayed the money to Tony, an act demonstrating his desire and ability to consummate a large-scale drug deal. Although the money did not contribute to the existence of the conspiracy, since plaintiff and Tony had already formed their agreement as previously discussed, it did contribute directly and materially to the object crime — the anticipated criminal possession of a controlled substance. There was therefore a sufficient nexus between the crime and the money to justify its forfeiture.
Accordingly, defendant’s motion for summary judgment is granted, as plaintiff is not a proper claimant of either the vehicle or the money seized and defendant is entitled to retain them. Plaintiff’s cross motion is denied, except insofar as he seeks return of that portion of the moneys seized which exceed $50,000 and as to which defendant has no dispute.