OPINION OF THE COURT
Gerald Sheindlin, J.
In the midst of an extensive pretrial hearing, dealing with *277 the admissibility of DNA identification tests, the court is called upon to determine whether certain X-ray films were sufficiently authenticated to allow their admission into evidence at the hearing. This written decision supplements the oral decision of this court rendered during the hearing.
The defendant is charged with the murder of a 20-year-old pregnant woman and her two-year-old daughter. The People, intending to prove at trial that the origin of bloodstains on defendant’s wrist watch was the blood of the adult victim, seek to introduce evidence of DNA identification tests.
This fascinating and novel issue has been dealt with in criminal proceedings on the trial level in this State (see, People v Wesley, 140 Misc 2d 306 [Albany County Ct 1988]; People v Lopez, Sup Ct, Queens County 1988) but as no appellate court in this State has yet ruled on the admissibility of said procedures, this court ordered that a pretrial hearing be held in accordance with the teachings of Frye v United States (293 F 1013) and People v Middleton (54 NY2d 42 [1981]) to determine the admissibility of new scientific evidence.
However, the precise issue presented herein during the course of this hearing was apparently not raised during the course of any DNA Frye hearing to date.
For purposes of resolving the present issue, the scientific techniques used to perform the extraction, isolation, cutting, electrophoresis, Southern blotting and hybridization of the DNA sample will not be discussed in detail. Suffice it to say, that after these procedures and others are performed, fragments of radioactive DNA present on a membrane are placed upon X-ray film for various periods of time (from hours to days). Subsequently, the exact position of the radioactive DNA present on the membrane are revealed in the X ray, known as autoradiographs or autorads.
There is no dispute amongst the parties or the renowned expert witnesses who have testified to date, that each person’s DNA is unique and different, as are our fingerprints.
The People have offered 17 autorads into evidence at this hearing. It is the authentication of erroneously dated autorads which is the focus of this decision.
The defense objects to their admission, pointing out that various autorads carry no precise dating. Indeed, voir dire and cross-examination have demonstrated that the precise dates of the development of certain autorads are unclear. Further *278 review of the lab notes failed to cure this problem, as they were in conflict as to whether various autorads were developed overnight or extended over a 3-, 4- or 7-day period. It is clear that there is no meaningful difference in the autorad itself whether it be developed overnight, in 3 days or in 7 days. Although the radioactive fragments of DNA may appear lighter or darker, depending on the length of exposure, it would not interfere with the interpretation of the autorad. The reliability of the interpretation is not being passed upon.
In support of the objection and to illustrate the importance of proper dating where the authentication of X rays is in issue, defense counsel cites CPLR 4532-a (1) as applicable here (see, CPL 60.10).
"In an action in which a claim for personal injuries is asserted, an X-ray of any party thereto is admissible in evidence provided:
"(1) that there is photographically inscribed on such X-ray the name of the injured party, the date when taken, the identifying number thereof, and the name and address of the physician under whose supervision the same was taken” (CPLR 4532-a [1]).
Indeed, counsel points to cases where the courts have refused to allow X rays into evidence where they fail to literally comply with this rule. (See, Harth v Liakis & Son, 103 Misc 2d 217; Galuska v Arbaiza, 106 AD2d 543.)
The court finds the reliance on this rule of evidence misplaced. The purpose of the rule is to establish a procedure to allow for authentication of X rays in personal injury cases absent the testimony of a radiologist. (See, McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B [1989 Supp Pamph], CPLR 4532-a, at 447; Richardson, Evidence § 379 [Prince 10th ed].)
It is within this context that the last paragraph of said section is to be understood: "Nothing contained in this section, however, shall prohibit the admissibility of an X-ray in evidence in a personal injury action where otherwise admissible.” (CPLR 4532-a.)
The rule is a substitute manner for laying a foundation not the exclusive manner. This is clearly stated in one of the cases cited by the defense. "[T]his section is in derogation of common law and provides for a substitute manner for laying the foundation for the admissibility of X rays” (Harth v Liakis & Son, supra, at 219).
*279 Furthermore, there is a fundamental difference between the autorads and the conventional X ray in a personal injury action. In the latter, the exact date of the X ray is critical and necessary for a determination of damages caused by a tortious act. Therefore, the date on which the X ray was taken goes to the heart of the case.
In contrast, the exact date that the autorad was developed is not of comparable significance as the molecular structure of the DNA remains uniquely the same throughout one’s lifetime.
Here, the expert witnesses indicated that there is no question that the autorads relate to this case. This was clearly demonstrated on defense counsel’s voir dire by the following exchange between the court and the expert:
"The Court: * * * If there are no lab notes, how can you tell just by looking at an autorad that it has something to do with People v. Castro?
"The Witness: * * * If you notice, on the very top of the original autoradiograph, there is a number that is present, 7501, this represents the number of the gel that was run on this particular case, and in the laboratory notes, it indicates that on that particular gel, samples were applied in this case [that] we are talking about here today * * * because from the notebook, we can follow through the events that took place to generate that gel, 7501, what was applied to that gel, when it was generated.
"The Court: So 7501, does apply peculiarly and particularly to the samples that you received with reference to this case, is that correct?
"The Witness: That is correct.
"The Court: And to no other case?
"The Witness: That is correct.
"The Court: To the exclusion of all other cases?
"The Witness: That is correct.”
Additionally, the witness indicated that photographs of the yield gel, test gel and analytic gel, when compared to the autorad, indicate similar lanes and DNA fragment sizes. Therefore, this also demonstrates that the autorad is unique to this case.
The defense has failed, on voir dire or on cross-examination, to show that the lack of precise dating is fatal to the authentication of the autorads. Whether the exposure was overnight or *280 seven days has absolutely no effect upon the authenticity of the autorads, to the extent that the physical position of the DNA fragments are unchanged.
Nothing herein shall be construed as suggestive of this court’s ultimate ruling to be rendered at the conclusion of the Frye hearing.
Accordingly, the court finds that the autorads have been sufficiently authenticated to allow their admission into evidence for purposes of this hearing.