OPINION OF THE COURT
Gerald Sheindlin, J.
The defendant was indicted for rape in the first degree (Penal Law § 130.35 [1]) and related offenses. Two issues arose during the course of the ensuing jury trial which are the subject of the following opinion. First, the defendant moved for a ruling permitting him to introduce into evidence testimony establishing that he agreed to submit to a DNA test. The defendant argued that his submission of a blood sample demonstrated "consciousness of innocence” and was thus probative on the issue of guilt. Second, in an unrelated application, the People moved to introduce into evidence on their direct case the contents of a "911” tape, wherein an unavailable witness described the sexual assault he had just seen the defendant commit upon a woman. The defendant opposed the application on the grounds that the tape was utter hearsay and that he would be deprived of his right to confront the declarant. For the reasons set forth below, the defendant’s motion to introduce the "consciousness of innocence” evidence is denied and the People’s motion to introduce the "911” tape is granted.
FINDINGS OF FACT
On June 26, 1990, the defendant invited his next-door neighbor into his apartment, ostensibly to get her to assist him with his college studies. After several hours of studying, the defendant went into the bathroom, only to emerge naked moments later. The defendant then grabbed his neighbor, and, despite her hysterical screams of protest, ripped off the woman’s clothes, pushed her onto his bed, closed the shade of his bedroom window and proceeded to forcibly rape his victim.
Unbeknownst to the defendant, his actions were witnessed through the open bedroom window by Angel Nieves and Valerie Lopez, both of whom lived directly across the street from the defendant. After they heard the victim’s screams and together saw the defendant’s assault on the woman, Mr. Nieves and Ms. Lopez immediately ran down to a street phone and called the police. Ms. Lopez stood next to her companion *174 and listened as Mr. Nieves described the events they had just observed to the police operator. Ms. Lopez’ voice was recorded on the 911 tape when she aided Mr. Nieves in describing the assault.
The police arrived within minutes after receiving the ”911” call, and were directed to the defendant’s apartment. In response to the police knock, the defendant, naked, partially opened his door and peeked outside, but was suddenly shoved aside by the victim who, screaming and naked, came running out of the apartment into the arms of the police. The still-naked defendant was allowed to dress before he was placed under arrest.
Despite diligent efforts, the People could not ascertain the whereabouts of Mr. Nieves for trial.
After the victim was transported to the hospital, a Vitullo kit was prepared and the presence of sperm was detected from a vaginal swab slide. The defendant subsequently arranged for a DNA test to be performed by Cellmark Diagnostics Laboratory. Both the People and the defendant agree that the test was properly performed, and there is no issue concerning the reliability of the DNA scientific testing procedure. (See, People v Castro, 143 Misc 2d 276 [Sup Ct, Bronx County 1989].) However, the test results were inconclusive. That is, although the DNA lanes for the victim matched, the DNA extracted from the recovered sperm was not of sufficient DNA molecular weight to provide a result.
CONCLUSIONS OF LAW
I

Testimony Describing Defendant's Willingness To Submit To DNA Testing Is Inadmissible

Absent a demonstrated applicable exception, any out-of-court statement offered in court to establish the truth of the facts asserted therein constitutes inadmissible hearsay. (See, People v Edwards, 47 NY2d 493, 496 [1979]; People v Settles, 46 NY2d 154, 166 [1978]; Richardson, Evidence § 200 [Prince 10th ed].) The rule against hearsay applies equally to verbal statements as well as to assertions by conduct. (See, e.g., People v Salko, 47 NY2d 230, 239 [1979].) However, reasoned analysis must be undertaken to determine whether particular conduct is to be categorized as "communicative or testimonial,” and hence subject to hearsay restrictions, or whether *175 the conduct is classifiable as "real or physical” evidence, and thus not subject to hearsay exclusions. (See, People v Thomas, 46 NY2d 100, 106 [1978].) Simply put, a determination must be made as to whether the nonverbal act is offered to establish a fact. Here, the defendant has admitted that the sole reason he wished to introduce the contested testimony was to demonstrate his "consciousness of innocence.”
In other words, the defendant sought to prove the fact of "innocence” by his conduct. Therefore, the nonverbal assertion clearly constitutes hearsay and can be admitted into evidence only if it falls within a recognized exception to the hearsay rule.
The defendant particularizes no exception which would permit the introduction of the nonverbal statement and this court finds no applicable exception. Indeed, the self-serving nature of this proclamation of innocence renders the statement inherently unreliable and hence inadmissible. (See, e.g., People v Reynoso, 73 NY2d 816, 819 [1988]; People v Perez, 166 AD2d 166, 167 [1st Dept 1990]; People v Hentley, 155 AD2d 392, 394 [1st Dept 1989].) The statement is also excludable as a prior consistent statement. (See, e.g., People v Davis, 44 NY2d 269, 277 [1978]; People v Sostre, 51 NY2d 958 [1980]; People v Cartagena, 160 AD2d 608, 609 [1st Dept 1990]; People v Jimenez, 102 AD2d 439, 443 [1st Dept 1984].)
Moreover, the defendant’s willingness to acquiesce to a DNA test is not truly probative of an innocent conscience since he would have had, in any event, been compelled to provide a blood sample for testing. (See, CPL 240.40 [2].) Finally, since the results of the DNA test were inconclusive and, therefore, irrelevant, any agreement to submit to the process would also be irrelevant.
ii
The ”911” Tape Is Admissible As A Present Sense Impression
Although the unreliable and hearsay nature of the "consciousness of innocence” testimony serves as a bar to the introduction of that evidence, the hearsay nature of the "911” tape does not necessarily mandate a similarly preclusory result. The critical inquiry in determining the competency of the evidence is whether the tape falls within an exception to the hearsay rule, which in turn involves an analysis of *176 whether the tape bears an indicia of reliability sufficient to " ' "afford the trier of fact a satisfactory basis for evaluating the truth” ’ ” of the statement. (See, People v Sanders, 56 NY2d 51, 64 [1982]; see also, People v Brown, 70 NY2d 513, 518-519 [1987]; People v Caviness, 38 NY2d 227, 231 [1975].)
Federal Rules of Evidence, rule 803 (1) defines the present sense exception to the hearsay rule as follows: "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.” Although New York courts have recognized this exception and have adopted the Federal definition of the term, State cases do not delineate the parameters of what constitutes a "present sense.” (See, People v Brown, 179 AD2d 485 [1st Dept 1992]; People v Luke, 136 Misc 2d 733, 734-739 [Sup Ct, Bronx County 1987], affd 147 AD2d 990 [1st Dept 1989]; People v Watson, 100 AD2d 452, 463-469 [2d Dept 1984].) Unlike the situations in Luke and Brown, the statements here did not occur contemporaneously with the declarant’s viewing. Instead, Mr. Nieves relayed the information moments after he had witnessed the rape.
The Federal definition of "present sense” would seem to encompass the given situation, since the statute specifically allows for statements made "immediately after” the viewing of the event. Notably, the Advisory Committee Notes to rule 803 (1) of the Federal Rules of Evidence explain that "in many, if not most, instances precise contemporaneity is not possible, and hence a slight lapse [of time] is allowable.” (56 FRD 183, 304.) Correspondingly, Federal cases have permitted the introduction of statements made moments after the described event occurred. (See, United States v Medico, 557 F2d 309, 313, 315 [2d Cir], cert denied 434 US 986 [1977]; United States v Obayagbona, 627 F Supp 329, 339-340 [ED NY 1985].)
Permitting the introduction into evidence of the "911” tape under State law would also be warranted if the tape bears sufficient indicia of reliability. Here, the short time between the event perceived and the statement safeguards against a defect in the declarant’s memory. Mr. Nieves spoke to the police at his first opportunity and his declaration was as spontaneous as possible. Only approximately two minutes elapsed between the report and the observation. Given the brief time span, there was little or no opportunity for Mr. Nieves to reflect and fabricate. (Cf., People v Brooks, 71 NY2d 877, 878 [1988]; People v Brown, 70 NY2d, supra, at 518.) Finally, the trustworthiness of the statement could be ade *177 quately analyzed by the jury through the testimony of Mrs. Lopez. Mrs. Lopez, who observed the rape and was present when Mr. Nieves made the statement, could corroborate the circumstances and contents of the declaration and be cross-examined on the subject. (Compare, People v Graham, 181 AD2d 504 [1st Dept 1992] ["911” tape inadmissible where there was no independent confirmation of the contents of the tape]; People v Watson, 100 AD2d, supra, at 466 [testimony of witness not present to observe events reputed by declarant not within the present sense impression exception].)
CONCLUSION
For the foregoing reasons, this court concludes that the "consciousness of innocence” evidence is excludable and irrelevant hearsay, whereas the "911” tape is admissable as a trustworthy, present sense impression. Accordingly, defendant’s motion to introduce the testimony regarding his willingness to submit to a DNA test is denied, and the People’s motion to admit the "911” tape is granted.